STATE OF NORTH CAROLINA v. McDONALD GURGANUS

No. 787SC762

(Filed 16 January 1979)

1. **Constitutional Law §§ 20, 28 — gender based classifications — tests for compliance with Fourteenth Amendment**

    The test controlling in cases involving constitutional challenges to gender based classifications applied by the states compels any statute or other state action to meet two requirements prior to being found permissible and consistent with the Fourteenth Amendment: (1) the classification by gender must serve "important" governmental objectives, and (2) the classification by gender must be "substantially" related to achievement of those objectives.

**2. Assault and Battery § 18.1; Constitutional Law § 28 — assault on female — gender based classification — no denial of equal protection**

    G.S. 14-33(b)(2), providing for sentence of a fine and /or up to two years imprisonment for assault by a male over eighteen upon a female, does not deny males equal protection of law in violation of the Fourteenth Amendment, since the protection of the physical integrity of the citizens of the state is an important governmental objective, and the statute is substantially related to achievement of that objective, as the average adult male is taller, heavier and possesses greater body strength than the average female, and the General Assembly could reasonably conclude that assaults by physically larger and stronger males are likely to cause greater physical injury and risk of death than similar assaults by females.

**3. Constitutional Law § 28 — age classifications — no denial of equal protection**

    The classifications based upon age found in G.S. 14-33(b)(2) do not violate the Fourteenth Amendment.

APPEAL by defendant from *Stevens, Judge.* Judgment entered 6 June 1978 in Superior Court, NASH County. Heard in the Court of Appeals 29 November 1978.

The defendant, McDonald Gurganus, was charged by warrant with the misdemeanor of assault on a female, he being a male person over the age of eighteen years, in violation of G.S. 14-33(b)(2). The defendant was found guilty as charged in the District Court Division and appealed to the Superior Court Division. Upon his trial de novo in the Superior Court Division the defendant pled not guilty. The jury returned a verdict of guilty as charged, and the trial court sentenced the defendant to a term of imprisonment of eighteen months. From this verdict and judgment, the defendant brought this appeal.

The State offered evidence tending to show that Mrs. Linda Gurganus, the wife of defendant, took her twelve-year-old daughter and eight-year-old son to a skating rink in Rocky Mount at approximately 7:30 p.m. on 29 March 1977. At that time she and the defendant were living separate and apart and were involved in a civil action in which she sought a divorce and child support. When Mrs. Gurganus and the children had been in the skating rink approximately fifteen minutes, the defendant, a thirty-six-year-old male person, entered. The defendant made a comment to his wife about being at the rink to show her "a-s-s off." She asked the defendant not to cause trouble or embarrass the family. At that point the defendant kicked Mrs. Gurganus in

the left leg and started to leave. He was wearing "regular dress shoes." The defendant, having started to leave, returned and asked Mrs. Gurganus for some tax papers. She told him that he had all of the copies of the papers but one, and he slapped her on the left cheek with his hand and left the rink.

*Attorney General Edmisten, by Assistant Attorney General Ralf F. Haskell, for the State.*

*Spruill, Trotter. & Lane, by N. K. Falk, for defendant appellant.*

MITCHELL, Judge.

The defendant contends that G.S. 14-33(b)(2) arbitrarily discriminates against him on the basis of his sex in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. In support of this contention, the defendant correctly points out that he has received a greater sentence of imprisonment as a male for assaulting a female than that permitted by statute in cases involving an otherwise identical assault by a female upon a male or upon another female. For reasons hereinafter set forth, we find the statute does not deny the defendant "the equal protection of the laws" in violation of the Fourteenth Amendment.

The authority of the courts of this State to declare an act of the General Assembly unconstitutional was established in *Bayard v. Singleton,* 1 N.C. 5 (1787). In *Bayard,* North Carolina adopted the doctrine of judicial review, which was to be later adopted by the Supreme Court of the United States in *Marbury v. Madison,* 5 U.S. 137, 2 L.Ed. 60 (1803). Should a conflict arise between a statute and the Constitution, our courts must decide the issues presented in the case before them in accordance with the Constitution, as it is the superior rule of law in such situations. *Nicholson v. Education Assistance Authority,* 275 N.C. 439, 168 S.E. 2d 401 (1969); *Mazda Motors v. Southwestern Motors,* 36 N.C. App. 1, 243 S.E. 2d 793 (1978). With these rules in mind, we undertake an analysis of the constitutional issues presented by the present case.

In passing upon questions involving gender based classifications, the Supreme Court of the United States has apparently

adopted "an intermediate standard of scrutiny in equal protection analysis, more deferential than the 'strict scrutiny' exercised in challenges to suspect classifications and classifications impinging on fundamental rights, but more exacting than the 'rational basis' test traditionally applied to economic and social welfare legislation." *The Supreme Court, 1976 Term,* 91 Harv. L. Rev. 1, 177 (1977) [hereinafter *"The Supreme Court"*]. In *Craig v. Boren,* 429 U.S. 190, 50 L.Ed. 2d 397, 97 S.Ct. 451, *reh. den.,* 429 U.S. 1124, 51 L.Ed. 2d 574, 97 S.Ct. 1161 (1976), Mr. Justice Brennan delivered the opinion of the Court requiring that: "[C]lassifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." 429 U.S. at 197. A majority of the Court joined in the opinion with each member filing a separate concurring opinion.

It has been stated that Mr. Justice Brennan's opinion in *Craig* did not specifically call for a "middle tier" of scrutiny. *The Supreme Court,* 178. The opinions of the other members of the Court forming the majority in that case, however, indicated that they were of the opinion that the case established just such a "middle tier." We concur in this view. The "middle tier" level of scrutiny set forth in *Craig* has been since reaffirmed and is for the present fully applicable to cases involving attacks upon gender based classifications. *Califano v. Goldfarb,* 430 U.S. 199, 51 L.Ed. 2d 270, 97 S.Ct. 1021 (1977). Although there is little agreement by the commentators that the *Craig* test is necessarily the best test to be employed in cases of alleged discrimination on the basis of sex, there does appear to be general agreement that it is the currently controlling test. Loewy, *A Different and More Viable Theory of Equal Protection,* 57 N.C.L. Rev. 1, 11 (1978) [hereinafter "Loewy"]; *The Supreme Court,* 177-88.

The commentators have also contended that, in addition to the test stated in *Craig,* the Court has allowed a generally unstated element of "reverse discrimination" against men in their capacity as a dominant group to influence its opinions. Loewy, 11-22 (1978); *cf. Califano v. Webster,* 430 U.S. 313, 51 L.Ed. 2d 360, 97 S.Ct. 1192 (1977) (upholding gender based classification "deliberately enacted to compensate for particular economic disabilities suffered by women.") These and other facets presented by the evolving law of equal protection have prompted one commentator to yield to an apparent sense of some frustra-

tion and to state that: "Surely we are near the point of maximum incoherence of equal protection doctrine." Karst, *The Supreme Court, 1976 Term—Forward: Equal Citizenship Under the Fourteenth Amendment,* 91 Harv. L. Rev. 1, 3 (1977).

[1, 2]   Despite the existence of certain areas of uncertainty which will require further clarification by the Supreme Court of the United States, we find the test set forth in *Craig* and reiterated in *Goldfarb* to be controlling in cases involving constitutional challenges to gender based classifications applied by the States. That test compels any statute or other "state action" to meet two requirements prior to being found permissible and consistent with the Fourteenth Amendment. First, the classification by gender must serve "important" governmental objectives. Second, the classfication by gender must be "substantially" related to achievement of those objectives. We find that G.S. 14-33(b)(2) meets both these requirements and is in no way violative of the letter or spirit of the Fourteenth Amendment.

In passing upon the constitutionality of the challenged subsection of the statute, we do not examine it in isolation. Instead, the challenged subsection must be viewed in context and as a part of the entire and integrated whole of the statute in which it is found. G.S. 14-33, in its entirety, prohibits varying types of assault, batteries and affrays as follows:

§ 14-33. *Misdemeanor assaults, batteries, and affrays, simple and aggravated; punishments.* —(a) Any person who commits a simple assault or a simple assault and battery or participates in a simple affray is guilty of a misdemeanor punishable by a fine not to exceed fifty dollars ($50.00) or imprisonment for not more than 30 days.

(b) Unless his conduct is covered under some other provision of law providing greater punishment, any person who commits any assault, assault and battery, or affray is guilty of a misdemeanor punishable by a fine, imprisonment for not more than two years, or both such fine and imprisonment if, in the course of the assault, assault and battery, or affray, he:

(1) Inflicts, or attempts to inflict, serious injury upon another person or uses a deadly weapon; or

(2) Assaults a female, he being a male person over the age of 18 years; or

(3) Assaults a child under the age of 12 years; or

(4) Assaults a law-enforcement officer or a custodial officer of the State Department of Correction, while the officer is discharging or attempting to discharge a duty of his office.

The statute in its entirety provides a logical pattern protecting the citizens of North Carolina from acts of violence. Subsection (a) of the statute establishes the crimes of assault, assault and battery and affray. Subsection (b) and its subsections do not create additional or separate offenses. Instead, those subsections provide for differing punishments when the presence or absence of certain factors is established. *State v. Roberts*, 270 N.C. 655, 155 S.E. 2d 303 (1967); *State v. Jones*, 258 N.C. 89, 128 S.E. 2d 1 (1962); *State v. Beam*, 255 N.C. 347, 121 S.E. 2d 558 (1961); *State v. Courtney*, 248 N.C. 447, 103 S.E. 2d 861 (1958); *State v. Jackson*, 226 N.C. 66, 36 S.E. 2d 706 (1946); *State v. Smith*, 157 N.C. 578, 72 S.E. 853 (1911). Although not elements of the crimes prohibited, these factors must be shown to exist in order for the evidence to support a judgment imposing one of the greater sentences provided. *State v. Grimes*, 226 N.C. 523, 39 S.E. 2d 394 (1946).

In adopting G.S. 14-33, the General Assembly of North Carolina clearly sought to prevent bodily injury to the citizens of the State arising from assaults, batteries and affrays. The protection of the physical integrity of the citizens of the State is *an* important governmental objective. It is not only *an* important governmental objective; it is *the* most important and fundamental objective of government. Without such protection there can be neither government nor civilization.

We must additionally determine, however, whether subsection (b)(2) of the statute, providing for imprisonment for a period of as much as two years in cases of assaults upon females by males over eighteen years of age but providing for a maximum term of imprisonment of not more than thirty days in most other cases of simple assault, is "substantially" related to achievement of the objective of physical integrity of the citizens of the State.

We find that the subsection is substantially related to this important objective.

In reaching this conclusion, we do not find it necessary to rely upon the numerous works documenting and attempting to quantify various social factors and which tend to establish that men, particularly in conjugal settings, assault women more frequently and more violently than women assault men, while women more frequently submit to such violence. *See, e.g., T. DAVIDSON, CONJUGAL CRIME (1978); BATTERED WOMEN: A PSYCHOSOCIOLOGICAL STUDY OF DOMESTIC VIOLENCE (M. Roy Ed. 1977); S. ROWBOTHAM, WOMEN, RESISTANCE AND REVOLUTION IN THE MODERN WORLD (1973); H. TOCH, VIOLENT MEN: AN INQUIRY INTO THE PSYCHOLOGY OF VIOLENCE (1969). We base our decision instead upon the demonstrable and observable fact that the average adult male is taller, heavier and possesses greater body strength than the average female. See Dothard v. Rawlinson,* 433 U.S. 321, 53 L.Ed. 2d 786, 97 S.Ct. 2720 (1977). We take judicial notice of these physiological facts, and think that the General Assembly was also entitled to take note of the differing physical sizes and strengths of the sexes. Having noted such facts, the General Assembly could reasonably conclude that assaults and batteries without deadly weapons by physically larger and stronger males are likely to cause greater physical injury and risk of death than similar assaults by females. Having so concluded, the General Assembly could choose to provide greater punishment for these offenses, which it found created greater danger to life and limb, without violating the Fourteenth Amendment.

We recognize that classifications based upon average physical differences between the sexes could be invalid in certain situations involving equal employment opportunity, participation in sports and other areas. *Dothard v. Rawlinson,* 433 U.S. 321, 53 L.Ed. 2d 786, 97 S.Ct. 2720 (1977); 15 Am. Jur., Civil Rights, § 170, p. 659; Annot., 26 A.L.R. Fed. 13 (1976); Annot., 66 A.L.R. 3d 1262 (1975); Annot., 23 A.L.R. Fed. 664 (1975). We believe that an analytical approach taking into account such average differences is an entirely valid approach, however, when distinguishing classes of direct physical violence. This is particularly true where, as here, the acts of violence classified are all criminal when engaged in by any person whatsoever and have no arguably pro-

State v. Gurganus

ductive end. *See Hall v. McKenzie*, 537 F. 2d 1232 (4th Cir. 1976). Certainly some individual females are larger, stronger and more violent than many males. The General Assembly is not, however, required by the Fourteenth Amendment to modify criminal statutes which have met the test of time in order to make specific provisions for any such individuals. The Constitution of the United States has not altered certain virtually immutable facts of nature, and the General Assembly of North Carolina is not required to undertake to alter those facts. G.S. 14-33(b)(2) establishes classifications by gender which serve important governmental objectives and are substantially related to achievement of those objectives. Therefore, we hold that the statute does not deny males equal protection of law in violation of the Fourteenth Amendment to the Constitution of the United States.

[3] Although not specifically raised by the defendant, we note that the challenged subsection of the statute also distinguishes between males over the age of eighteen years who participate in prohibited acts of violence and those eighteen years of age or younger who participate in such acts. Thus far, the Supreme Court of the United States has not held that age discrimination is "suspect." *See, e.g., Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 49 L.Ed. 2d 520, 96 S.Ct. 2562 (1976). Therefore, classifications by age are required to meet standards no higher than, and perhaps not so high as, those which must be met by gender based classifications. Thus, for the reasons previously set forth, we think that the classifications based upon age found in G.S. 14-33(b)(2) do not violate the Fourteenth Amendment. *See Hall v. McKenzie*, 537 F. 2d 1232 (4th Cir. 1976).

Counsel for the defendant has urged us to take into consideration certain matters which counsel contends arise in view of the pendency of the proposed "Equal Rights Amendment" to the Constitution. We think it would be signally ill-advised for us to establish any precedent tending to require that the courts of this State take into consideration the pendency of amendments to the Constitution which have been put forward by the Congress but have not been ratified by the required number of the States. Ample opportunities will arise for the consideration of such issues after proposed amendments have been ratified and become a part of the Constitution.

The defendant has additionally presented assignments of error directed to the trial court's charge to the jury and to the sufficiency of the evidence to go to the jury. We have found these assignments to be without merit, and they are overruled.

The defendant received a fair trial free from prejudicial error, and we find

No error.

Judges CLARK and WEBB concur.