GUILFORD COUNTY BOARD OF EDUCATION, JEANETTE PIPPIN, PAT EDWARDS, SUE FARLOW, SHEILA GREEN, NATALIE JACKSON, JOHN PARKS, AND ANITA SHARPE, PLAINTIFFS-APPELLANTS v. THE GUILFORD COUNTY BOARD OF ELECTIONS, THE GUILFORD COUNTY BOARD OF COMMISSIONERS, THE GREENSBORO CITY BOARD OF EDUCATION, AND THE HIGH POINT CITY BOARD OF EDUCATION, DEFENDANTS-APPELLEES

No. 9218SC421

(Filed 15 June 1993)

1. **Schools § 3 (NCI3d); Statutes § 2.7 (NCI3d) — act to consolidate school administrative units — no local act — reasonable classification standard met — general welfare test met**

The trial court did not err in holding that an act to consolidate school administrative units in Guilford County or to provide for two administrative units in that county, subject to a referendum, was not a local act, even though it dealt with education only in Guilford County rather than throughout the State, since the number of counties excluded or included is not necessarily determinative, and a statute may be general even if it includes only one county; the Act qualified as a general law under both the reasonable classification standard and the general welfare test in that the students in Guilford County are a class which reasonably warrants special legislative attention and the provisions of the Act apply uniformly to all of the students; in deciding to consolidate the school administrative units of the county the Legislature made a rational distinction reasonably related to the Act's purpose to pursue the goals of excellence and equity in educational opportunity for all children of Guilford County; and legislation which promotes equitable access to educational opportunity among all children attending public school even in a single county is rationally related to the overall purpose of excellence and equity in our school system, which in turn promotes the general welfare of all citizens.

**Am Jur 2d, Schools §§ 6-9; Statutes § 7.**

2. **Schools § 3 (NCI3d); Statutes § 2.7 (NCI3d) — uniform system of free public schools — act to consolidate school administrative units — uniform system furthered by act — act not unconditional**

Article IX, § 2(1) of the N.C. Constitution providing for a uniform system of free public schools does not require that

every school within every county or throughout the State be identical in all respects but instead requires that a statewide system be established and made available to all children in North Carolina. Such system is in place in North Carolina and is furthered by the Act to consolidate the school administrative units in Guilford County; therefore, the Act in question does not violate Article IX, § 2(1) of the N.C. Constitution.

Am Jur 2d, Schools § 9.

3. **Schools § 3 (NCI3d); Statutes § 2.7 (NCI3d)— merging school systems—funding dictated by General Assembly—constitution not violated**

The N.C. Constitution does not deny, expressly or otherwise, the General Assembly the power to provide a minimum funding level for merging school systems during the transition to a consolidated system, and nothing in the constitution requires that funding of public schools in all counties in the State be identical or addressed through a single uniform law.

Am Jur 2d, Schools § 9.

4. **Schools § 3 (NCI3d); Statutes § 2.7 (NCI3d)— funding of local system mandated by General Assembly—no violation of Constitution**

An act to consolidate school administrative units in Guilford County did not violate Article IX, § 2(2) of the N.C. Constitution, since the first sentence of that section provides that the General Assembly may mandate that local government provide financial support to the public schools as it deems appropriate, and the second sentence means that local government boards may supplement that mandate if they choose. The second sentence does not mean that local governments have complete discretion to fund their public schools, since that interpretation, propounded by plaintiffs, would render the first sentence meaningless.

Am Jur 2d, Schools § 9.

Appeal by plaintiffs from order and declaratory judgment entered 17 January 1992 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 31 March 1993.

Plaintiffs, the Guilford County Board of Education and its duly elected members, brought this civil action "seeking a declaratory judgment that Chapter 78 of the 1991 Session Laws of the General Assembly of North Carolina (ratified Senate Bill 457) is unconstitutional and void, and seeking to enjoin the defendants from any acts in furtherance of the provisions of that Act."

On 8 May 1991, the North Carolina General Assembly enacted Chapter 78 of the 1991 Session Laws entitled "An Act to Consolidate All of the School Administrative Units in Guilford County or to Provide for the Two City School Administrative Units in that County to have Boundaries Coterminous With the Cities, Subject to a Referendum" (hereinafter the "Act"). The Act recited that it was promulgated in order to better pursue the Guilford County school administrative units' common goals of excellence and equity in educational opportunity for all children "regardless of where the children reside or attend school within Guilford County, in order that the needs of all children attending school in Guilford County are met, regardless of the children's race, gender, or social or economic condition." Part I of the Act provided for the consolidation of the existing Greensboro City School Administrative Unit, the existing High Point City School Administrative Unit, and the existing Guilford County School Administrative Unit, effective 1 July 1993. The consolidated school administrative unit would be known as the Guilford County School Administrative Unit with its Board of Education composed of eleven members, elected as provided in the Act. Additionally, section 15 of the Act provides funding for the merged school system as follows:

(a) The Board of Commissioners of Guilford County shall provide adequate funding for the operations of the Interim Guilford County Board of Education in fulfillment of its responsibilities as are set out in this act during the period from June 1, 1992, through June 30, 1993.

(b) To assist in assuring that the quality of the educational programs existing within Guilford County shall not decline, local funding for current operating expenses for the consolidated system from 1993-94 will be provided by the Guilford County Commissioners at a per student rate which equals the budgeted local expense per student (average daily membership) of the Greensboro Public School System for fiscal year 1989-90 provided by and appropriated to said system by the Commis-

sioners including the local supplemental tax as found in the adopted budget resolution of the Greensboro City Board of Education dated October 2, 1989 adjusted as follows. For years 1990-91, 1991-92, 1992-93, 1993-94, and 1994-95, the per student rate shall be increased annually by the percentage of salary increase for teachers funded by the State of North Carolina for each previous fiscal year . . . .

Alternatively, Part II of the Act provided for the territorial jurisdictional boundaries of the Greensboro and High Point administrative units to be coterminous with the city limits of those cities within Guilford County. Part III of the Act provided for a referendum to be held 5 November 1991 through which the voters of Guilford County would choose between the two options. The Act provided that the form of the ballot would be:

"VOTE FOR ONLY ONE CHOICE

1. [ ] FOR consolidation of the three school administrative units in Guilford County into one administrative unit.

2. [ ] FOR the Greensboro City School Administrative Unit to have the same boundaries in Guilford County as the current City of Greensboro, and shall expand to include all areas in Guilford County that might hereafter be added to the City of Greensboro and the High Point City School Administrative Unit to have the current boundaries of the City of High Point within Guilford County, including the area specified in the Greensboro-High Point Joint Annexation Agreement . . . and will include any future annexations within Guilford County.

The referendum included only the two options provided above and did not include a choice which would have permitted the voters to vote against both proposals. The election was held and the majority of votes were cast for option one above (hereinafter the "Merger Option").

Plaintiffs filed this action for declaratory and injunctive relief alleging in pertinent part that the Act was a prohibited local act in violation of Article XIV, § 3, Article II, § 24 and Article V, § 2 of the North Carolina Constitution; that the Act mandated a system of public schools in Guilford County that exceeds the requirements mandated elsewhere in North Carolina in violation of Article IX, § 2(1); and that the Act required the taxpayers of Guilford County to bear a heavier burden for the support of

the uniform state system of public schools than required in any other North Carolina county in violation of Article IX, § 2(2) of the North Carolina Constitution.

The trial court found that Chapter 78 of the 1991 Session Laws of the General Assembly was constitutional, valid and enforceable and entered judgment in favor of defendants on all issues. Plaintiffs appealed.

*Richard Schwartz & Associates, by Richard A. Schwartz and Reginald T. Shuford; Douglas, Ravenel, Hardy, Crihfield & Mosely, by John W. Hardy, for plaintiff-appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by James T. Williams, Jr., and Jill R. Wilson; Fisher, Fisher, Gayle, Clinard & Craig, by John O. Craig, III; Attorney General Lacy H. Thornburg, by Senior Deputy Attorney General Edwin M. Speas, for defendant-appellees Greensboro City Board of Education and High Point City Board of Education.*

MARTIN, Judge.

The issue before this Court is whether Chapter 78 of the 1991 Sessions Laws is violative of any of the provisions of the North Carolina Constitution as alleged by plaintiffs. We conclude that it is not and affirm the judgment of the trial court.

At the outset, we note that plaintiffs have failed to set out or argue in their brief several of the assignments of error contained in the record on appeal, and particularly their assignments of error related to the allegation in their amended complaint that the failure to provide a "status quo" option in the referendum required by Chapter 78 violated the plaintiffs' fundamental right to vote. It is well-settled that assignments of error not argued in an appellant's brief are deemed abandoned on appeal. *Wachovia Bank and Trust v. Southeast Airmotive*, 91 N.C. App. 417, 371 S.E.2d 768 (1988), *disc. review denied*, 323 N.C. 706, 377 S.E.2d 230 (1989). *State v. Davis*, 68 N.C. App. 238, 314 S.E.2d 828 (1984).

Because the Constitution is a restriction of powers, and those powers not surrendered are reserved to the people to be exercised by their representatives in the General Assembly, so long as an act is not forbidden, the wisdom and expediency of the enactment is a legislative, not a judicial, decision. *Wayne County Citizens Assn. v. Wayne County Bd. of Comrs.*, 328 N.C. 24, 399 S.E.2d

311 (1991). Therefore, the judicial duty of passing upon the constitutionality of an act of the General Assembly is one of great gravity and delicacy. *Greensboro v. Wall*, 247 N.C. 516, 101 S.E.2d 413 (1958). This Court presumes that any act promulgated by the General Assembly is constitutional and resolves all doubt in favor of its constitutionality. *Moore v. Knightdale Bd. of Elections*, 331 N.C. 1, 413 S.E.2d 541 (1992); *State v. Evans*, 73 N.C. App. 214, 326 S.E.2d 303 (1985).

In challenging the constitutionality of a statute, the burden of proof is on the challenger, and the statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground. *Baker v. Martin*, 330 N.C. 331, 411 S.E.2d 143 (1991); *In re Belk*, 107 N.C. App. 448, 420 S.E.2d 682, *disc. review denied*, 333 N.C. 168, 424 S.E.2d 905 (1992). One who attacks an act of the Legislature on the grounds that it is unconstitutional must point out the particular provision of the Constitution which it is claimed the act violated. *Rice v. Rigsby*, 259 N.C. 506, 131 S.E.2d 469 (1963). In passing upon the constitutionality of a challenged subsection of a statute, the subsection must be viewed in context as part of the entire statute in which it is found. *State v. Gurganus*, 39 N.C. App. 395, 250 S.E.2d 668 (1979). It is not this Court's duty to determine the wisdom and expediency of a legislative act but rather to judge whether the act exceeds constitutional limits or prohibitions. *Adams v. Dept. of N. E. R. and Everett v. Dept. of N. E. R.*, 295 N.C. 683, 249 S.E.2d 402 (1978). Finally, "[w]here a statute is susceptible of two interpretations, one of which is constitutional and the other not, the courts will adopt the former and reject the latter." *Wayne County Citizens Assn.*, 328 N.C. at 29, 399 S.E.2d at 315.

Plaintiffs have brought forward in their brief twenty-seven of the forty-six assignments of error contained in the record on appeal, and have advanced three arguments in support thereof.

I.

[1] By their first argument, plaintiffs contend that the Act does not promote the general public welfare, and that there is no rational basis for singling out the schools in Guilford County as opposed to those throughout the State. Thus, they argue, the trial court erred in holding that the Act is a general law, as opposed to a local act prohibited by the North Carolina Constitution. They

contend that the trial court erred in holding that the Act was not a local act.

Our Supreme Court has distinguished between a valid general law and a prohibited local act as follows:

> A general law defines a class which reasonably warrants special legislative attention and applies uniformly to everyone in the class. On the other hand, a local act unreasonably singles out a class for special legislative attention or, having made a reasonable classification, does not apply uniformly to all members of the designated class. In sum, the constitutional prohibition against local acts simply commands that when legislating in certain specified fields the General Assembly must make rational distinctions among units of local government which are reasonably related to the purpose of the legislation. A law is general if 'any rational basis reasonably related to the objective of the legislation can be identified which justifies the separation of units of local government into included and excluded categories' (citations omitted).

*Adams v. Dept. of N. E. R. and Everett v. Dept. of N. E. R.,* 295 N.C. 683, 690-91, 249 S.E.2d 402, 407 (1978). Additionally, an act is not invalid merely because it is local unless it violates some constitutional provision. *State v. Smith,* 265 N.C. 173, 143 S.E.2d 293 (1965). The *Adams* Court was faced with a challenge to the Coastal Area Management Act of 1974 which established a cooperative program of coastal area management between local and state governments. The plaintiffs in that case contended that the General Assembly could not reasonably distinguish between the coastal area and the remainder of the State when enacting environmental legislation and that even if the coast could be dealt with separately, the twenty counties covered by the act did not embrace the entire area necessary for the purposes of the legislation. The *Adams* Court concluded that the recreational and aesthetic nature of the coastal zone and its significance to the public welfare amply justified the reasonableness of special legislative treatment. That court also noted that the areas included were reasonably related to the purposes of the act as the "constitutional prohibition against local legislation does not require a perfect fit." *Adams* at 694, 249 S.E.2d at 409.

However, in *Town of Emerald Isle v. State of N.C.,* 320 N.C. 640, 360 S.E.2d 756 (1987), the Court, faced with the question of

whether a legislative enactment establishing particular public pedestrian beach access facilities constituted a local act, decided that the traditional reasonable classification analysis previously applied by the Supreme Court in *Adams* was ill-suited to the situation presented by that case, since by definition a particular public pedestrian beach access facility must rest in one location. *Id.* at 650, 360 S.E.2d at 762. Because the primary purpose of the constitutional limitation on legislative enactments of local acts is to allow the General Assembly an opportunity to devote more time and attention to legislation of state-wide interest and concern, the *Emerald Isle* Court found that instead of applying a reasonable classification analysis, it would focus on the extent to which the act in question affected the general public interests and concerns. *Id.* at 651, 360 S.E.2d at 763. In doing so, the Court recognized that a statute will not be deemed private merely because it extends to particular localities or classes of persons. *Id.* The *Emerald Isle* Court concluded that the legislative act before it was not a local act as the coastal areas are among the State's most valuable resources and the act at issue sought to promote the general public welfare by preserving the beach area for general public pedestrian use. *Id.* Plaintiffs in this case argue that the trial court's conclusion that the Act is a general law is erroneous in that the Act deals only with education in Guilford County rather than throughout the State. Plaintiffs contend that the Act fails to qualify as a general law under either the *Adams* reasonable classification standard or an *Emerald Isle* general welfare test, both of which were specifically addressed by the able trial judge in the judgment. Plaintiffs argue that there exists no reasonable basis for singling out the schools of Guilford County for special treatment when there are numerous school systems across the state with problems which deserve legislative attention. Furthermore, plaintiffs assert that the Act merely promotes the public welfare in Guilford County alone while ignoring the remaining counties in North Carolina. We disagree.

The simple fact that the Act affects only Guilford County, rather than all of the counties in North Carolina, does not compel the conclusion that it is a local act. The number of counties excluded or included is not necessarily determinative, and a statute may be general even if it includes only one county. *Surplus Co. v. Pleasants, Sheriff,* 264 N.C. 650, 142 S.E.2d 697 (1965). "For the purposes of legislating, the General Assembly may and does classify

conditions, persons, places and things, and classification does not render a statute 'local' if the classification is reasonable and based on rational difference of situation or condition." *Id.* at 656, 142 S.E.2d at 702. We agree with the trial court that the Act meets the definition of a general law under both the *Adams* and the *Emerald Isle* tests. The students in Guilford County are a class which reasonably warrants special legislative attention and the provisions of the Act apply uniformly to all of the students. In deciding to consolidate the school administrative units of Guilford County, the Legislature made a rational distinction reasonably related to the Act's purpose to pursue the goals of excellence and equity in educational opportunity for all children of Guilford County. Merely because other counties in the State may have similar goals or needs does not preclude the General Assembly from passing legislation designed to address the needs of all students in a single county. Thus, we hold that the Act withstands the reasonable classification analysis.

Application of the general public welfare analysis which the Supreme Court recognized in *Emerald Isle* also leads to the conclusion that the Act is a constitutional general law. Legislation which promotes equitable access to educational opportunity among all children attending public schools even in a single county is rationally related to the overall purpose of excellence and equity in our school system, which in turn promotes the general welfare of all citizens. Our Constitution specifically provides that "[r]eligion, morality, and knowledge being necessary to good government and the happiness of mankind, schools, libraries, and the means of education shall forever be encouraged." N.C. Const. Article IX, § 1.

## II.

[2] By their second argument, plaintiffs contend that the trial court erred by concluding that the Act does not violate Article IX, § 2(1) of the North Carolina Constitution. Section 2(1) provides as follows:

> *General and uniform system: term.* The General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students.

Plaintiffs complain that the Act, by singling out Guilford County for special benefits and added burdens, violates the uniformity

requirements of Article IX, § 2(1). Both parties agree that the term "uniform" does not require that every school within every county or throughout the State be identical in all respects; the term requires that a statewide system be established and made available to all children in North Carolina. *Kiddie Korner v. Board of Education*, 55 N.C. App. 134, 285 S.E.2d 110 (1981), *disc. review denied*, 305 N.C. 300, 291 S.E.2d 150 (1982). We hold that such a system is in place in North Carolina which system is furthered by the Act, and therefore, the Act does not violate Article IX, § 2(1) of the Constitution.

Plaintiffs contend that the Act violates the constitutional directive to the General Assembly to provide a uniform school system throughout the State by singling out one county, purporting to cite various needs and goals of that county, and bestowing upon it benefits and mandated funding burdens not conferred upon any other county in the State. Therefore, plaintiffs argue that, while on its face the Act describes problems and needs of children all over North Carolina, the Act's scheme is not statewide but rather is designed solely to provide certain opportunities for the children of Guilford County. While plaintiffs agree that there is no question that funding as applied may and does vary from county to county without violating the constitutional mandate of uniformity, they argue that in this case the State has mandated funding selectively for one particular county. Thus, plaintiffs argue that although "uniform" does not mean identical, it does mean that the Legislature may not selectively provide piecemeal public education. In support of their argument, plaintiffs cite the decisions of our Supreme Court in *Greensboro v. Hodgin*, 106 N.C. 182, 11 S.E. 586 (1890) and *Lane v. Stanly*, 65 N.C. 153 (1871). The *Lane* Court construed the forerunner to Article IX, § 2(1) in our 1868 Constitution interpreting the "uniformity" in education requirement as follows:

> It will be observed that it is to be a 'system;' it is to be 'general,' and it is to be 'uniform.' It is not to be subject to the caprice of localities, but every locality, yea, every child, is to have the same advantage, and be subject to the same rules and regulations.

*Lane*, at 157-58. Similarly, the *Hodgin* Court stated that:

> [T]he Legislature is required to promote popular education by devising and establishing a plan — a scheme — consisting of necessary and well-appointed constituent parts, and the whole

organized into a complete system of public schools. Such system must be general — not local — not limited to one or more places or localities in the State; it must extend and prevail throughout its borders; and so, also, it must be uniform in all material respects as contemplated by the Constitution — that is, the system cannot be so regulated by statute as that it will apply and operate as a whole in some places, localities and sections of the State, and not in the same, but in different ways, in other places, localities and sections. An essential requirement of the provision above recited is that the system, whatever it may be, in whatever manner constituted, must be general and uniform as a whole, and therefore so in all its material parts, the purpose being to extend to all the children within the prescribed ages, wherever they may reside in the State, the same opportunity to obtain the benefits of education in free public schools — certainly to the extent that the State itself shall supply means to support such schools.

*Hodgin*, at 186, 11 S.E. at 587.

The principles of law quoted above support the view that Article IX does not require uniform schools from county to county, nor does it forbid the General Assembly from addressing public school funding in a particular county. Rather, Article IX requires only a uniform system of schools across the State. As our Supreme Court has stated:

The term 'uniform' here clearly does not relate to 'schools,' requiring that each and every school in the same or other districts throughout the State shall be of the same fixed grade, regardless of the age or attainments of the pupils, but the term has reference to and qualifies the word 'system' and is sufficiently complied with where, by statute or authorized regulation of the public-school authorities, provision is made for establishment of schools of like kind throughout all sections of the State and available to all of the school population of the territories contributing to their support (citations omitted).

*Board of Education v. Board of Commissioners*, 174 N.C. 469, 473, 93 S.E. 1001, 1002 (1917). North Carolina presently has an overall uniform statewide school system as is required by its Constitution. Chapter 78 is merely one of many statutes enacted to further this uniform system by specifically addressing the problems of one county. This Court has held previously that funding differences

among schools in various counties based on differences in tax bases do not violate the Constitutional mandate that all children in North Carolina receive an equal educational opportunity. *Britt v. N.C. State Board of Education*, 86 N.C. App. 282, 357 S.E.2d 432, *appeal dismissed*, 320 N.C. 790, 361 S.E.2d 71 (1987). Additionally the evidence demonstrates that Chapter 78 will promote uniformity in Guilford County by creating one school system rather than three, one funding level rather than three, and one school administration rather than three.

[3] Plaintiffs offer no support for their assertion that non-uniform funding resulting from statewide legislation is permissible, but non-uniform funding resulting from legislation directed toward one county somehow violates Article IX § 2(1). Additionally, the portions of the Act that address funding provide merely for temporary interim funding. It is inevitable that every merger act that addresses a single county's school system will create obligations and benefits that differ from those established in other counties. Moreover, the Constitution, in Article IX, § 2(2), contradicts plaintiffs' arguments, as the governing boards of units of local government having responsibility for public education are expressly authorized to "use local revenues to add to or supplement any public school or post-secondary program." Thus, counties with greater financial resources are able to provide greater educational resources to its students. *See Britt, supra.* We agree with defendants' contention that the North Carolina Constitution does not deny, expressly or otherwise, the General Assembly the power to provide a minimum funding level for merging school systems during the transition to a consolidated system, and nothing in the Constitution requires that funding of public schools in all counties in the State be identical or addressed through a single uniform law. Thus, we uphold the trial court's conclusion that the Act does not violate the provisions of Article IX, § 2(1) of the North Carolina Constitution.

III.

[4] In their third argument, plaintiffs contend that the trial court erred in holding that the Act does not violate Article IX, § 2(2) of the North Carolina Constitution. That section provides as follows:

*Local responsibility.* The General Assembly may assign to units of local government such responsibility for the financial support of the free public schools as it may deem appropriate. The governing boards of units of local government with finan-

cial responsibility for public education may use local revenues to add to or supplement any public school or post-secondary school program.

Plaintiffs assert that the mandatory language found in the funding provisions of the Act which state that "local funding for current operating expenses for the consolidated system from 1993-94 will be provided by the Guilford County Commissioners at a per student rate which equals the budgeted local expense per student . . . of the Greensboro Public School System for fiscal year 1989-90," and that for the years 1990-95, "the per student rate shall be increased annually by the percentage of salary increase for teachers funded by the State of North Carolina for each previous fiscal year" violate Article IX § 2(2) because of the permissive term "may" in the second sentence of § 2(2). Plaintiffs assert that the quoted portion of section 15 prescribes the amount of annual increase in local funding and ties the increase to an arbitrary and capricious standard bearing no rational relation to the purpose of the Act or the funding. Thus, plaintiffs argue, the Act strips the local authorities of their power to determine whether there is a need to supplement state funding for education. Plaintiffs assert further that the first sentence of § 2(2) which gives the General Assembly the power to delegate responsibility to local government units as it deems appropriate must be read in light of the uniformity mandate in § 2(1). Otherwise, they claim, the mandatory uniformity requirement would be rendered meaningless. We disagree.

Section 2(2) merely provides in its first sentence that the General Assembly may mandate that local government provide financial support to the public schools as it deems appropriate. The second sentence of that section merely means that local government boards may supplement that mandate if they choose. This gives both sentences their plain, logical meaning and renders neither meaningless. *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991); *Duke Power Co. v. Clayton, Comr. of Revenue*, 274 N.C. 505, 164 S.E.2d 289 (1968). Plaintiffs' interpretation that the second sentence of that section provides complete discretion to local governments to fund their public schools would render the first sentence meaningless. Power not expressly limited by the Constitution remains with the people acting through their representatives in the legislature. *Brannon v. N.C. State Board of Elections*, 331 N.C. 335, 416 S.E.2d 390 (1992). Therefore, we uphold the trial court's

conclusions that the minimum funding requirement of Chapter 78 does not violate Article IX, § 2(2) of the North Carolina Constitution.

The judgment of the Superior Court of Guilford County declaring Chapter 78 of the 1991 Sessions Laws of the General Assembly of North Carolina to be constitutional and valid, and denying plaintiff's prayer for injunctive relief is affirmed.

Affirmed.

Judges EAGLES and LEWIS concur.