563 S.E.2d 311

The STATE, Respondent,

v.

Todd William WRIGHT, Appellant.

No. 25455.

Supreme Court of South Carolina.

Heard May 24, 2001.

Decided April 29, 2002.

Kenneth E. Sowell, of Simpsonville, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia, and Solicitor Thomas E. Pope, of York, for respondent.

WALLER, Justice:

Todd William Wright was convicted of criminal domestic violence of a high and aggravated nature (CDVHAN) and sentenced to 10 years imprisonment, suspended upon service of 8 years, and 5 years probation.  We affirm.

## FACTS

■ Wright, 6″ tall and weighing 216 lbs., beat and kicked his wife Wendy on the evening of February 16, 1999. Her injuries were so severe that two of her ribs were fractured and her spleen had to be removed. Wright was indicted for criminal domestic violence of a high and aggravated nature.[1] The aggravating factors alleged in the indictment were "a difference in the sexes of the victim and the defendant" and/or that "the defendant did inflict serious bodily harm upon the victim by kicking her in the mid-section requiring her to seek medical attention."

Wright objected to the judge's charge on the aggravating circumstance of "a difference of the sexes," contending it violated equal protection.[2] The objection was overruled; Wright was found guilty as charged.

## ISSUE

Does the aggravating circumstance of a "difference in the sexes" violate equal protection?

## DISCUSSION

Wright contends the judge's charge on the aggravating circumstance of a "difference in the sexes" violated his right to equal protection. We disagree.

■ The equal protection clause prevents only irrational and unjustified classifications, not all classifications. *South*

---

1. The offense of CDVHAN incorporates the elements of ABHAN. S.C.Code § 16–25–65 (Supp.2000). The elements of ABHAN are 1) the unlawful act of violent injury to another, accompanied by circumstances of aggravation. Circumstances of aggravation include the use of a deadly weapon, the intent to commit a felony, infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in gender, the purposeful infliction of shame and disgrace, taking indecent liberties or familiarities with a female, and resistance to lawful authority. *State v. Fennell*, 340 S.C. 266, 531 S.E.2d 512 (2000). Subsection C of section 16–25–65 specifically states that it does not codify the common law offense of ABHAN but, rather, creates a statutory offense of CDVHAN.

2. U.S. Const. amend. XIV, § 1 ("No State shall ... deny to any person within its jurisdiction the equal protection of the laws.").

*Carolina Public Svc. Authority v. C & S Nat'l Bank,* 300 S.C. 142, 386 S.E.2d 775 (1989). For a gender-based classification to pass constitutional muster, it must serve an important governmental objective and be substantially related to the achievement of that objective. *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Griffin v. Warden, CCI,* 277 S.C. 288, 286 S.E.2d 145, *cert. denied,* 459 U.S. 942, 103 S.Ct. 255, 74 L.Ed.2d 199 (1982). A law will be upheld where the gender classification realistically reflects the fact that the sexes are not similarly situated in certain circumstances. *In the Interest of Joseph T,* 312 S.C. 15, 430 S.E.2d 523 (1993). *See also Michael M. v. Superior Court of Sonoma County,* 450 U.S. 464, 469, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) (holding that as long as the rule of nature that the sexes are not similarly situated in certain circumstances is realistically reflected in a gender classification, the statute will be upheld as constitutional). "The relevant inquiry . . . is not whether the statute is drawn as precisely as it might have been, but whether the line chosen by the [legislature] is within constitutional limitations." *Id.* at 473, 101 S.Ct. 1200.

In *Michael M., supra,* Justice Stewart wrote:

[In] [certain narrow] circumstances, a gender classification based on clear differences between the sexes in [sic] not invidious, and a legislative classification realistically based upon those differences is not unconstitutional. . . . When men and women are not in fact similarly situated in the area covered by the legislation in question, the Equal Protection Clause does not mean that the physiological differences between men and women must be disregarded. While those differences must never be permitted to become a pretext for invidious discrimination, no such discrimination is presented by this case. The Constitution surely does not require a State to pretend that demonstrable differences between men and women do not really exist.

450 U.S. at 478 and 481, 101 S.Ct. 1200 (Justice Stewart concurring).

In *State v. Gurganus,* 39 N.C.App. 395, 250 S.E.2d 668, 672–673 (1979), the North Carolina Supreme Court upheld a statute enhancing the punishment for males convicted of assault on a female, stating,

We base our decision instead upon the demonstrable and observable fact that the average adult male is taller, heavier and possesses greater body strength than the average female. *See Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). We take judicial notice of these physiological facts, and think that the General Assembly was also entitled to take note of the differing physical sizes and strengths of the sexes. Having noted such facts, the General Assembly could reasonably conclude that assaults and batteries without deadly weapons by physically larger and stronger males are likely to cause greater physical injury and risk of death than similar assaults by females. Having so concluded, the General Assembly could choose to provide greater punishment for these offenses, which it found created greater danger to life and limb, without violating the Fourteenth Amendment. We recognize that classifications based upon average physical differences between the sexes could be invalid in certain situations involving equal employment opportunity, participation in sports and other areas. ... We believe that an analytical approach taking into account such average differences is an entirely valid approach, however, when distinguishing classes of direct physical violence. This is particularly true where, as here, the acts of violence classified are all criminal when engaged in by any person whatsoever and have no arguably productive end. *See Hall v. McKenzie,* 537 F.2d 1232 (4th Cir.1976). Certainly some individual females are larger, stronger and more violent than many males. The General Assembly is not, however, required by the Fourteenth Amendment to modify criminal statutes which have met the test of time in order to make specific provisions for any such individuals. The Constitution of the United States has not altered certain virtually immutable facts of nature, and the General Assembly of North Carolina is not required to undertake to alter those facts. [The North Carolina statute] establishes classifications by gender which serve important governmental objectives and are substantially related to achievement of those objectives. Therefore, we hold that the statute does not deny males equal protection of law in violation of the Fourteenth Amendment to the Constitution of the United States.

See also Buchanan v. State, 480 S.W.2d 207, 209 (Tex.1972) (statute making assault or battery committed by adult male on an adult female an aggravated assault did not deny equal protection since "[i]t is a matter of common knowledge, and a proper subject for judicial notice, that women, as a general rule, are of smaller physical stature and strength than are men"). Accord Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908) (recognizing differences in body structure and physical strength of sexes); People v. Silva, 27 Cal. App.4th 1160, 33 Cal.Rptr.2d 181 (1994) (upholding against equal protection challenge criminal domestic abuse statute criminalizing willful injury upon person of opposite sex with whom assailant cohabits; noting obvious distinction that women are physically less able to defend themselves against their husbands than vice-versa).

We find that the "difference in gender" aggravator is legitimately based upon realistic physiological size and strength differences of men and women such that it does not violate equal protection. Accord Gurganus, supra. Cf Schlesinger v. Ballard, 419 U.S. 498, 508, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (different treatment of men and women reflects, not archaic and overbroad generalizations, but, instead, the demonstrable fact that male and female line officers in the Navy are not similarly situated); Rostker v. Goldberg, 453 U.S. 57, 72–83, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (holding that draft registration applicable only to men was justified because women are excluded from combat). We therefore affirm Wright's convictions.

**AFFIRMED.**

MOORE and BURNETT, JJ., concur.

TOAL, C.J., concurring in result only in a separate opinion in which PLEICONES, J., concurs.

TOAL, Chief Justice, concurring in result only.

While I concur with the majority's decision to affirm Wright's CDVHAN conviction, I disagree with the majority's conclusion that the "difference in the sexes" aggravating circumstance does not violate equal protection. I believe the "difference in the sexes" aggravating circumstance, as a gen-

der-based classification, violates equal protection. However, the violation is harmless in this instance because the jury found another aggravating circumstance, infliction of serious bodily injury, which does not violate equal protection.

I agree with the majority that the "difference in the sexes" aggravator is inherently gender-based, but would find that it does not satisfy the second prong of the analysis employed by the majority. As explained by the majority, to pass constitutional muster, a gender-based classification must (1) serve an important governmental objective and (2) be substantially related to the achievement of that objective. *Craig v. Boren; Griffin v. Warden.* The burden rests on the state to make this showing. Although the "difference in the sexes" classification is presumably intended to serve the governmental objective of preventing domestic violence, I would find it is not substantially related to achieving this objective.

The CDVHAN statute was designed to address violence in the home; it applies when any person harms any member of their household.[3] The statute then is designed to prevent domestic violence against men, women, and children by perpetrators of both sexes. Having an aggravating circumstance based solely on gender does not substantially further this objective or the narrower objective of protecting women from domestic abuse. In my opinion, this gender-based classification is no different than the classification discussed by the majority and struck down by this Court in *In the Interest of Joseph T.* In that case, this Court held a statute criminalizing communication of indecent messages to females violated Equal Protection. *Id.* Although the Court recognized that some gender-based classifications which realistically reflect that men and women are not similarly situated can withstand equal protection scrutiny on occasion, it clarified that distinctions in the law which were based on "old notions" that women should be afforded "special protection" could no longer withstand equal protection scrutiny. *Id.*

---

3. Household member includes spouses, former spouses, parents and children, relatives to the second degree, persons with a child in common, and males and females who are cohabiting or previously cohabited. S.C.Code Ann. § 16–25–10 (Supp.2001).

In my opinion, this "difference in gender" aggravating circumstance is a distinction that perpetuates these "old notions." There is no logical purpose for it except to protect physically inferior women from stronger men; a purpose based on out-dated generalizations of the sexes no longer favored in legal analysis. *See United States v. Virginia*, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (reiterating that gender classifications cannot be used as they once were to create or perpetuate the legal, social, and economic inferiority of women and cautioning reviewing courts to take a hard look at generalizations or tendencies of the sexes). Similarly, the cases relied upon by the majority are based on out-dated generalizations of the sexes no longer favored. The equal protection analysis set forth by the majority relies almost entirely on the 1979 North Carolina Supreme Court opinion *State v. Gurganus*, 39 N.C.App. 395, 250 S.E.2d 668 (1979). No court, federal or state, has ever relied on the analysis the majority cites from *Gurganus*. In fact, *Gurganus* has been cited only once by any court, and then only for a rule of statutory interpretation in a case that did not involve equal protection issues. *Guilford County Bd. of Educ. v. Guilford County Bd. of Elections*, 110 N.C.App. 506, 430 S.E.2d 681 (1993).

Deterring domestic violence is more efficiently and appropriately accomplished through other aggravators, such as the "great disparity in ages or physical conditions of the parties" and "infliction of serious bodily injury" aggravators. In many cases, there may be a great disparity in strength between a male and a female, but if there is not, there is no reason why a difference in gender should serve as an aggravating circumstance to "protect" women to the detriment of men. Therefore, I would find that the "difference in the sexes" aggravating circumstance violates equal protection because it fails to substantially relate to the government objective of preventing domestic violence. However, I would affirm Wright's conviction because the jury also found a permissible, gender-neutral aggravating circumstance: infliction of serious bodily injury.

Accordingly, I respectfully concur in result only.

PLEICONES, J., concurs.