**IN RE McCLAIN**

[226 N.C. App. 465 (2013)]

IN THE MATTER OF KEVIN MCCLAIN

No. COA12-1258

Filed 26 April 2013

**Sexual Offenders—sex offender registry—denial of request to terminate registration requirement**

> The trial court did not err by denying a petition for removal from the sex offender registry. Even if petitioner's argument that the provision under N.C.G.S. § 14-208.12A(a1)(2) that incorporated the Adam Walsh Act was unconstitutional as an improper delegation of legislative authority had merit, the trial court could still have exercised its discretion to deny petitioner's request to terminate his registration requirement.

Appeal by petitioner from order entered 13 June 2012 by Judge Walter H. Godwin, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 11 March 2013.

*Roy Cooper, Attorney General, by William P. Hart, Jr., Assistant Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by John F. Carella, Assistant Appellate Defender, for petitioner–appellant.*

MARTIN, Chief Judge.

Petitioner Kevin McClain pled guilty to the felony offense of indecent liberties with a child on 29 January 2001. He was sentenced to fifteen to eighteen months imprisonment, thirty-six months of supervised probation, and was required to register as a sex offender under the North Carolina Sex Offender and Public Protection Registration Program, N.C.G.S. §§ 14-208.7–19A, which he did on 7 August 2001.

After ten years, McClain petitioned the Superior Court of New Hanover County to be removed from the sex offender registry. Petitioner admitted at the subsequent hearing on 13 June 2012 that during the past ten years he was "convicted of a felony for failure to comply with obligations under the sex offender registry law and served a period of imprisonment," and as a result, he did not have a "clean record." The court denied McClain's petition for removal from the registry on the grounds

that the requested relief did not comply with federal standards as outlined in N.C.G.S. § 14-208.12A(a1)(2).

On appeal, petitioner McClain contends it was error for the trial court to deny his petition for removal from the sex offender registry on the basis that it did not comply with N.C.G.S. § 14-208.12A(a1)(2), because the incorporation of the Adam Walsh Child Protection and Safety Act of 2006 ("the Adam Walsh Act") and the federal Sex Offender Registration and Notification Act ("SORNA") into N.C.G.S. § 14-208.12A(a1)(2) is an unconstitutional delegation of legislative authority under the North Carolina Constitution.

Although another panel of this Court recently decided *In re Hamilton*, __ N.C. App. __, 725 S.E.2d 393 (2012) (incorporating and applying the requirements of the Adam Walsh Act under N.C.G.S. § 14-208.12A(a1)(2)), both parties agree that the constitutionality of the incorporation of those federal standards was not raised in that case. Therefore, because the instant case presents a question distinct from that at issue in *In re Hamilton*, we now consider petitioner's constitutional argument. *Cf. In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36–37 (1989) (holding that a court is bound by the decision of prior panels of the same court on the same issue). After careful consideration, we affirm the trial court's order.

We review this issue *de novo. Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("[D]e novo review is ordinarily appropriate in cases where constitutional rights are implicated."). "This Court presumes that any act promulgated by the General Assembly is constitutional and resolves all doubt in favor of its constitutionality." *Guilford Cty. Bd. Of Educ. v. Guilford Cty. Bd. Of Elections*, 110 N.C. App. 506, 511, 430 S.E.2d 681, 684 (1993).

After ten years on North Carolina's sex offender registry, "a person required to register under [N.C.G.S. § 14-208.7] may petition the superior court to terminate the 30-year registration requirement if the person has not been convicted of a subsequent offense requiring registration under this Article." N.C. Gen. Stat. § 14-208.12A(a) (2011). The court "may" grant this relief if, among other conditions being met, "[t]he requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State." N.C. Gen. Stat. § 14-208.12A(a1)(2).

The federal Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program ("the Jacob Wetterling Act"), which set up guidelines for state sex offender registration programs, was enacted on 26 November 1997. 42 U.S.C. § 14071(a)(1) (1997) (repealed 2006). Initially, under the Jacob Wetterling Act, "[a] person required to register under subsection (a)(1) of this section shall continue to comply with this section . . . until 10 years have elapsed since the person was released from prison or placed on parole, supervised release, or probation . . . ." 42 U.S.C. § 14071(b)(6)(A) (repealed 2006). In October 1998, the Jacob Wetterling Act was amended to include additional requirements under the Pam Lynchner Sexual Offender Tracking and Identification Act of 1996 ("the Pam Lynchner Act"). 42 U.S.C. § 14072 (repealed 2006). On 27 July 2006, the Jacob Wetterling and Pam Lynchner Acts were repealed, effective "the later of 3 years after July 27, 2006, or 1 year after the date on which the software described in [42 U.S.C. § 16923] is available." Act of July 27, 2006, Pub. L. No. 109-248, tit. I, § 129(b), 120 Stat. 600.

On the same day, the Adam Walsh Child Protection and Safety Act of 2006 was enacted to "protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below," and to "establish[] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901 (2006). The Adam Walsh Act makes it clear that it is intended to expand on and replace the Jacob Wetterling Act.[1] The Adam Walsh Act covers substantially the same subject matter previously covered by the Jacob Wetterling Act; in particular, it outlines and updates the requirements for sex offender registration and notification in Part A of the statute. Pursuant to the Adam Walsh Act, the full registration period for what it deems a Tier 1 sex offender is fifteen years; it can be reduced to ten years, however, if the offender is not convicted of another sex offense or of an offense for which imprisonment of more than a year can be imposed, i.e., they have a "clean record," and if the offender successfully completes any periods of supervised release, probation, and parole and an appropriate sex offender treatment program. 42 U.S.C. § 16915 (2006).

---

1. Jacob Wetterling is the first victim listed as inspiring the legislation in § 16901, which declares the purpose of the statute. 42 U.S.C. § 16901(1) (2006). Moreover, § 16902 of the Adam Walsh Act states "[t]his chapter establishes the Jacob Wetterling, Megan Nicole Kanka, and Pam Lynchner Sex Offender Registration and Notification Program." 42 U.S.C. § 16902 (2006).

Petitioner contends that incorporating the "clean record" requirement of the Adam Walsh Act into the North Carolina Sex Offender and Public Protection Registration Program, as was done in *In re Hamilton* by referring to "the Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State" in N.C.G.S. § 14-208.12A(a1)(2) is an unconstitutional delegation of the North Carolina General Assembly's lawmaking authority. Specifically, petitioner argues that the statutory reference to "the Jacob Wetterling Act, as amended" and the "federal standards" language improperly incorporates future federal enactments to be promulgated by Congress.

Under article II, section 1 of the North Carolina Constitution, the General Assembly may not abdicate or delegate its authority to make law to departments of government or administrative agencies. *See* N.C. Const. art. II, § 1; *N.C. Tpk. Auth. v. Pine Island, Inc.*, 265 N.C. 109, 114, 143 S.E.2d 319, 323 (1965). Constitutional delegation of limited legislative authority occurs when the legislature has "declared the policy to be effectuated and has established the broad framework of law within which it is to be accomplished and standards for the guidance of the administrative agency," and simply "delegate[s] to such agency the authority to make determinations of fact upon which the application of a statute to particular situations will depend." *Foster v. N.C. Med. Care Comm'n*, 283 N.C. 110, 119, 195 S.E.2d 517, 523 (1973). Simply defining when particular conduct is unlawful by reference to an external standard, on the other hand, has not been deemed an unconstitutional delegation of legislative authority. *See State v. Rhoney*, 42 N.C. App. 40, 43, 255 S.E.2d 665, 667 (1979) (holding that an ordinance which gives authority to the Superintendent to approve the use of school property for certain extracurricular activities is not unconstitutional as a delegation of legislative authority).

Here, the legislature is not creating a framework and then asking Congress or another federal agency to determine facts or fill in that framework; these statutes comprise two parallel sex offender notification and registration programs, state and federal, existing side-by-side. Rather than abdicating or delegating legislative authority to make new guidelines to the federal government, the North Carolina legislature is attempting to bring its program in line with the external federal standards with which it needs to comply in order to receive federal funding.

The Adam Walsh Act explicitly requires jurisdictions to "substantially implement" its requirements in order to receive federal funds, as

long as doing so is not unconstitutional under its state Constitution. 42 U.S.C. § 16925 (2006). Accordingly, there are provisions in N.C.G.S. § 14-208.7 *et seq.* which directly implement aspects of the Adam Walsh Act; these provisions, however, are spelled out and do not refer to the federal statute or requirements, they simply adopt the requirements specifically in the text of the statute.[2] The offending reference to "federal standards" in N.C.G.S. § 14-208.12A(a1)(2) of which the petitioner complains is the legislature's attempt to substantially implement the Adam Walsh Act's requirements by bringing North Carolina's conditions for removal from the sex offender registry in line with those recommended by the federal government in the Adam Walsh Act. Because we hold this action by the North Carolina legislature is not an unlawful delegation of its authority, we review the court's denial of the petition for removal using the framework employed by the Court in *In re Hamilton.*

Here, both parties agree that petitioner is a tier 1 sex offender pursuant to 42 U.S.C. § 16911.

> Thus, under the terms of section 16915, [p]etitioner's full registration period would be 15 years (subsection (a)), which could be reduced by five years (subsection (b) (3)(A)) if, after a period of ten years (subsection (b)(2) (A)), [p]etitioner had not committed another sex offense or other serious offense and had successfully completed any "periods of supervised release, probation, and parole" and "an appropriate sex offender treatment program" (subsection (b)(1)).

*In re Hamilton,* __ N.C. App. at __, 725 S.E.2d at 399.

Petitioner first registered pursuant to N.C.G.S. § 14-208.7 on 7 August 2001. He petitioned the trial court for removal on 29 May 2012, more than ten years later. Based on evidence at the hearing, the trial court found that evidence supported that petitioner had satisfied all the requirements for removal except the requirement that the relief he requested complied with the provisions of the federal Jacob Wetterling Act, as amended, and "any other federal standards applicable to the termination of [the] registration requirement," because petitioner admitted at trial that he did not have a "clean record." Based on these findings of fact, the court correctly concluded that petitioner is not entitled to the relief requested, and must continue to maintain registration.

---

2. 42 U.S.C. §§ 16913 and 16916 require in-person initial registration and in-person updates to keep an offender's registration current; N.C.G.S §§ 14-208.7 and 14-208.9 added these requirements as well.

Moreover, we must also note that even if petitioner's argument that the provision incorporating the Adam Walsh Act was unconstitutional as an improper delegation of legislative authority had merit, the trial court could still have exercised its discretion to deny petitioner's request to terminate his registration requirement. *See In re Hamilton,* __ N.C. App. at __, 725 S.E.2d at 399 (holding that "after making findings of fact" the trial court is "free to employ its discretion in reaching its conclusion of law whether [p]etitioner is entitled to the relief he requests" because N.C.G.S. § 14-208.12A(a1) states that the trial court "may" grant petitioner relief if the terms of the statute are met). The trial court's order denying petitioner McClain's petition is affirmed.

Affirmed.

Judges HUNTER and STEPHENS concur.