**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JOHNSON S. LAKE, Defendant**

Case No. SX-11-CR-429

Superior Court of the Virgin Islands

Division of St. Croix

September 25, 2013

BRADY, *Judge*

## MEMORANDUM OPINION

(September 25, 2013)

**THIS MATTER** is before this Court on Defendant's Motion to Dismiss ("Motion") and Memorandum of Points and Authorities in Support of motion to Dismiss ("Memorandum"), filed on January 29, 2013, and the People's Opposition to Defendant's Motion to Dismiss ("Opposition"), filed on April 22, 2013. The Motion challenges the constitutionality of V.I. CODE ANN. tit. 14, § 298(5), which elevates any assault and battery committed by an adult male upon a female from simple assault and battery to aggravated assault and battery.

█ Under 14 V.I.C. § 298, aggravated assault and battery is punishable by up to one year incarceration, whereas simple assault is punishable by incarceration only for up to six months. On its face, 14 V.I.C. § 298(5) establishes gender classifications that fail the intermediate scrutiny review prescribed by the United States Supreme Court and thereby it violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, as applied to the Virgin Islands by the Revised Organic Act. *See* U.S. CONST. Amend. XIV, § 1; Revised Organic Act of 1954, § 3 (codified at 48 U.S.C. § 1561 (2009)), *reprinted in* V.I. CODE

ANN., Hist. Docs, Org. Acts, and U.S. Const., at 87-88 (1995) (preceding V.I. CODE ANN. tit. 1).

For the reasons set forth below, the Court finds that the People have failed to show that this gender-based provision is substantially related to the achievement of an important governmental purpose. Therefore, 14 V.I.C. § 298(5) is determined to be unconstitutional and in violation of the Revised Organic Act, and Defendant's Motion to Dismiss with regard to Count One of the Information filed June 28, 2011, charging Defendant with aggravated assault and battery upon an adult female, will be granted.

## I. Background

Defendant Johnson Lake allegedly assaulted his wife, Melissa Barker-Lake, and his minor daughter, identified only as J.L., on or about June 12, 2011. Melissa Barker-Lake immediately contacted the Virgin Islands police who arrested Defendant later that day for "kicking his sixteen year old daughter in her stomach and binding his wife's right hand inwards." (V.I.P.D. Arrest Rep. no. 11A06156, filed June 12, 2011). At the time, Defendant had a medium build, weighed 192 pounds, and stood 5'9" tall. He was sober and unarmed.

Defendant was charged with two counts of aggravated assault and battery as acts of domestic violence, in violation of 14 V.I.C. § 298(5) and 16 V.I.C. § 91(b)(1). Count One of the Information charges that Defendant committed an aggravated assault and battery against his wife, "a female"; and Count Two charges the same crime against Defendant's daughter, "a female, J.L., a minor." Defendant entered a plea of not guilty as to both counts.

On January 28, 2013, Defendant filed his Motion to Dismiss, arguing the unconstitutionality of 14 V.I.C. § 298(5). The People responded by filing its Opposition on April 22, 2013. This matter is fully submitted on the issue of whether 14 V.I.C. § 298(5) violates the Equal Protection Clause of the U.S. Constitution and Section 3 of the Revised Organic Act. Defendant's Motion challenges only the constitutionality of this statute as applied in Count One of the Information to the male Defendant's alleged aggravated assault on his adult wife. Defendant does not challenge Count Two of the Information charging aggravated assault on his minor daughter. Since an assault by any adult gives rise to aggravated assault regardless of the offender's gender under the provisions of 14 V.I.C § 298(5), Count Two does not present a constitutional question.

## II. DEFENDANT'S MOTION STATES SUFFICIENT GROUNDS TO SATISFY FED. R. CIV. P. 47

While the majority of the People's Opposition focuses on Defendant's Equal Protection challenge, the People also claims that Defendant's Motion fails to provide an argument stating the grounds upon which it is based, as required by FED. R. CRIM. P. 47, applicable pursuant to SUPER. CT. R. 7. *Opposition*, at 3. The People claims that the Motion to Dismiss does not sufficiently "provide any argument that the Defendant was discriminated against and that the statute was not substantially related to an important government interest." *Id.*

To the contrary, Defendant contends that 14 V.I.C. § 298(5):

> [H]eightens the six month misdemeanor offense of simple assault and battery to the one year misdemeanor offense of aggravated assault and battery in instances where the complaining witness is female and the accused is an adult male. However, there is no reciprocal enhancement where the complaining witness is an adult male and the accused is female. *Memorandum*, at 2.

This paragraph clearly articulates Defendant's contention that he is subject to a different legal standard because of his gender in violation of the Equal Protection Clause. As Defendant does "state the grounds on which [the Motion] is based and the relief or order sought," his Motion satisfies the requisites of FED. R. CRIM. P. 47.

## III. 14 V.I.C. § 298 (5) CLASSIFIES PERSONS BASED SOLELY UPON GENDER

Next, the People argue that "the purpose of section 298 is to address size disparities among [sic] the aggressor and victim and to prevent serious injury to the victim." *Opposition*, at 7. The People contends that because "it is a well-known fact that an adult male is larger than both an adult woman and a child and that an adult female is larger than a child," this statute is about size not gender disparities. *Id.*, at 5. The statute's purpose, it contends, is to protect smaller individuals from the aggression of larger individuals more likely to inflict harm because of these size differences.

The statute in question states: "Whoever commits an assault and battery — *being an adult male, upon the person of a female* or child, or being an adult female, upon the person of a child . . . shall be fined not

more than $500 or imprisoned more than one year." 14 V.I.C. § 298(5) (emphasis added).

■ The United States Supreme Court has held that:

> The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) *citing United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (internal quotations omitted).

■ A court may "presume that the legislature expresses its legislative intent through the ordinary meaning of the words it chooses to use, and if the statutory language is clear, it is not necessary to look for congressional intent from legislative history." *Hess Oil of the Virgin Islands Corp. v. Richardson*, 894 F. Supp. 211, 216, 32 V.I. 336 (D.V.I. 1995).

To adopt the People's position would be to ignore the "plain and unambiguous meaning" of 14 V.I.C. § 298(5). Under this statute, a man who assaults a woman is guilty of aggravated assault; however a woman who assaults a man is not guilty of aggravated assault. While 14 V.I.C. § 298(5) also makes it aggravated assault for either a man or a woman to assault a child, this does not abrogate the gender distinction set out in the first ten words of 14 V.I.C. § 298(5): "being an adult male, upon the person of a female. . . ."

■ The statute does not mention the weight or size of the offender, but simply differentiates based upon the offender's gender. The Supreme Court requires that our inquiry cease if a statute's language is "unambiguous." *Robinson*, 519 U.S. at 340. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.*, at 341.

With reference to an assault and battery committed by one adult against another adult, 14 V.I.C. § 298(5) clearly and without any equivocation draws a distinction based solely upon the offender's gender. The People's attempted linguistic gymnastics ("it is clear that this statute is addressing

the size disparity between the aggressor and the victim and is not based on gender," *Opposition*, at 4) fail to twist the language of 14 V.I.C. § 298(5) into some other interpretation than that set forth by the ordinary meaning of the words used. No further inquiry or statutory interpretation is required because it is the plain and unambiguous meaning of 14 V.I.C. § 298(5) to differentiate between male and female offenders solely based upon gender.

## IV. THE STATUTE VIOLATES THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION

The Fourteenth Amendment to the United States Constitution and Section 3 of the Revised Organic Act of 1954 prohibit the Territory from denying equal protection of the law to any person.[1] Since the adoption of the Organic Act of 1936, Congress has codified its intention to make the federal Constitution, including its Equal Protection Clause, applicable to the Virgin Islands in a manner consistent with its applicability to the States. *See In re Brown*, 439 F.2d 47, 50-51, 8 V.I. 313 (3d Cir. 1971).

■ "The function of the Equal Protection Clause . . . is simply to measure the validity of classifications created by state [and territorial] laws." *Simmonds*, 58 V.I. at 11, *quoting San Antonio Ind. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 59-60, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973) (Stewart, J., concurring). " 'Equal protection' . . . emphasizes disparity in treatment by a [government] between classes of individuals whose situations are arguably indistinguishable." *Id., quoting Ross v. Moffitt*, 417 U.S. 600, 609, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974).

■ Statutes which establish classifications of persons and openly discriminate between them based upon gender are subject to a heightened

---

[1] Congress first guaranteed equal protection in the Virgin Islands through the Organic Act of 1936. *See* Organic Act of 1936, § 34, 49 Stat. 1807, 1815 (1936) (Repealed by 96 Stat. 1709 (1982)). "While the Organic Act of the Virgin Islands which was enacted in 1936 did not extend the Constitution to the Islands, it does contain a Bill of Rights which includes a due process and equal protection clause." *Alton v. Alton*, 207 F.2d 667, 670, n.8, 2 V.I. 600 (3d Cir. 1953). By the Revised Organic Act of 1954, Congress extended the Equal Protection Clause directly to the Virgin Islands declaring that it "shall have the same force and effect there as in the United States or in any State of the United States . . . ." Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561 (2009). "Thus, technically, Congress guaranteed equal protection to the Virgin Islands twice: expressly and by extension." *People v Simmonds*, 58 V.I. 3, 11 n.3 (V.I. Super. Ct. 2012).

level of scrutiny under the Equal Protection Clause. *See Orr v. Orr*, 440 U.S. 268, 278, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979). While statutory classifications based upon gender are not subject to the "strict scrutiny" afforded to classifications distinguishing between racial and ethnic groups, explicit gender distinctions are subject to an intermediate level of scrutiny. *See Hynson v. City of Chester Legal Dept.*, 864 F.2d 1026, 1029 (3d Cir. 1988). The fact that a statute "discriminates against males rather than females does not exempt it from scrutiny or reduce the standard of review." *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982), *citations omitted.*

■ To pass constitutional muster, the People must demonstrate that the statute's gender classification "serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.' " *Id.*, at 724, *quoting Wengler v. Druggists Mutual Ins. Co.*, 446 U.S. 142, 150, 100 S. Ct. 1540, 64 L. Ed. 2d 107 (1980).

"If the [government]'s objective is legitimate and important, [the Court] next determine[s] whether the requisite direct, substantial relationship between objective and means is present." *Simmonds*, 58 V.I. at 12, *quoting Mississippi Univ. for Women*, 458 U.S. at 725. "The purpose of requiring that close relationship is to assure that the validity of a classification is determined through reasoned analysis rather than through the mechanical application of traditional, often inaccurate, assumptions about the proper roles of men and women." *Mississippi Univ. for Women*, 458 U.S. at 725-726.

### 1. THE GENDER CLASSIFICATIONS OF 14 V.I.C. § 298(5) DO NOT ADVANCE IMPORTANT GOVERNMENTAL OBJECTIVES

The People argues that the Legislature specifically intended to protect female victims by subjecting men to "an aggravating factor when females are the victim." *Opposition*, at 8. It claims that protecting the biologically weaker gender from the biologically stronger gender is an important governmental objective that was specifically considered by the Legislature in enacting 14 V.I.C. § 298(5). Without factual support within or outside the record, the People relies upon the "well-known fact that an adult male is larger than . . . an adult woman. . . ." *Opposition*, at 4, and, in effect, asks the Court to adopt the type of "mechanical application of traditional, often inaccurate, assumptions" specifically rejected by the Supreme Court. *Id.*, 458 U.S. at 726.

■ Further, the record before the Court fails to establish that the specific intention of the Legislature was as the People urge. Judicial inquiries into legislative "motives or purposes are a hazardous matter, and the search for the 'actual' or 'primary' purpose of a statute is likely to be elusive." *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 469-470, 101 S. Ct. 1200, 67 L. Ed. 2d 437 (1981) (internal citations omitted). In some instances, "legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decision-making body, minutes of its meetings, or reports." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977). But "[i]t is difficult or impossible for any court to determine the 'sole' or 'dominant' motivation behind the choices of a group of legislators." *Palmer v. Thompson*, 403 U.S. 217, 225, 91 S. Ct. 1940, 29 L. Ed. 2d 438 (1971).

On two recent occasions, judges of the Superior Court of the Virgin Islands have examined the legislative history behind 14 V.I.C. § 298(5) and declined to accept the People's position. In *Simmonds*, the Court rejected the People's suggestion that the Legislature enacted this statute to specifically address a culture of domestic violence in the Virgin Islands:

> During the hearing,[2] Senator Nelson acknowledged that he "heard it mentioned that . . . domestic abuse is culturally accepted in the Caribbean." . . . But he immediately rejected that notion. "I don't think it's something we should say . . . because I don't think it's something we accept." . . . No senator stated during the hearing that domestic violence against women was historically accepted in the Caribbean, or in the U.S. Virgin Islands in particular, the location most relevant here. *Simmonds*, 58 V.I. at 34.

In *Virgin Islands v. McGowan*, 56 V.I. 3, 19 (V.I. Super. Ct. 2012), the People conceded and the Court found that "nothing in the legislative history [of 14 V.I.C. § 298(5)] mentions physical differences between the

---

[2] April 2010 hearing on the Domestic Violence Prevention Act before the Committee on Public Safety, Homeland Security, and Justice. *See generally* transcript of *The Domestic Violence Prevention Act of 2010: Hearing on B. No. 28-0177 Before the Comm. on Pub. Safety, Homeland Sec., and Just.*, 28th Leg. (V.I. Apr. 21, 2010). *See also* Act. No. 7180, 2010 V.I. Sess. L. 107.

genders or justifies penalizing men more severely for acts of which both sexes are capable."

> When asked to specifically designate legislative history, data, or grounded facts in support of the proffered "government interests" recited, the People, without hesitation, conceded that the legislative history surrounding 14 V.I.C. § 298(5) did not speak to any physical differences between the genders nor did it provide any justification for penalizing men more severely for acts of which both sexes are capable. Counsel went so far as to say: "[O]ur Legislature doesn't give us a great deal [] when they are creating laws. In all honesty, I have not ever seen legislation written this way . . . . I honestly don't necessarily think this is a fair way to discriminate against genders. . . . I am just trying to argue as best I can. . . from the legal and constitutional point. . . and use as much legislative history as I can."

*Id.*, 56 V.I. at 11, *footnotes omitted.*

Both *Simmonds* and *McGowan* rejected the argument that the Legislature's classification of persons by gender was specifically intended to advance the important governmental objective to protect females by subjecting men to more severe punishment in cases of assault where the victims are female.

Absent more evidence showing the "dominant motivation behind the choices of a group of legislators, there is insufficient legislative history or other evidence to support the People's position. *Palmer*, 403 U.S. at 225. This Court cannot infer the existence of an unarticulated important governmental interest in the Legislature's discrimination by gender in enacting 14 V.I.C. § 298(5). In the absence of justification for the gender disparity in the statutory language, in the legislative history or in the present record, the Court cannot find that an important governmental interest is served by treating differently men and women accused of committing assault and battery.

### 2. THE STATUTE IS NOT SUBSTANTIALLY RELATED TO THE GOVERNMENT'S PURPOSE

Even if we were to accept the premise that the purpose of the disparate treatment in 14 V.I.C. § 298(5) is to protect women from domestic or other physical violence and that such purpose constitutes an important

governmental objective; the statute is not substantially related to the government's purpose to pass intermediate scrutiny.

The People contends that a 1981 Territorial Court case establishes this statute's constitutionality. In *Government of the V.I. v. Prescott*, 18 V.I. 110 (Terr. Ct. 1981), the Court held that "the general classification embodied in the statute was reasonably calculated to achieve the overall objective," finding that "females warrant special protection from male attackers." *Id.*, at 112, *quoting Government of the V.I. v. Smith*, Crim. No. 166/1979 (V.I. Terr. Ct. 1980) (unreported).

The People's main argument is that males and females are not similarly situated when it comes to domestic or other physical violence. "In limited circumstances, a gender-based classification favoring one sex can be justified if it intentionally and directly assists members of the sex that is disproportionality burdened." *Opposition*, at 11, *quoting Mississippi Univ. for Women*, 458 U.S. at 728.

The People also quotes the *Prescott* Court's statement that "it is a matter of common knowledge and a proper subject for judicial notice that women as a general rule are of smaller physical stature and strength than men." *Prescott*, 18 V.I. at 112. This Court declines to take such judicial notice and without any contrary proof in the record, finds that for the purposes of 14 V.I.C. § 298(5), women are similarly situated to men. As such, the disparate treatment between men and women in 14 V.I.C. § 298(5) is not substantially related to the government's purpose and therefore fails to pass intermediate scrutiny.

### i. No Virgin Islands case law has properly upheld 14 V.I.C. § 298(5)

 The Territorial Court's ruling in *Prescott* is owed no deference because the decision affirmed 14 V.I.C. § 298 (5) in a limited way without findings of fact or significant conclusions of law. Court findings regarding the justification for a statute are entitled to great deference. *Michael M.*, 450 U.S. at 470. However, "*Prescott* did not state what justifications, if any, the government offered, which it accepted, regarding Section 298(5)." *Simmonds*, 58 V.I. at 29.

*Prescott* did hold that the statute's gender-based classification is constitutional in light of the physical differences between men and women and the need to extend women special protection. However, when examining the constitutionality of 14 V.I.C. § 298(5), the *Prescott* Court

utilized a rational basis review, a lower constitutional standard of review than the heightened intermediate level of scrutiny required for classifications based on sex. *Id.*, at 112.

 Prior to the *Prescott* decision, the Supreme Court held that "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976). The Supreme Court has since reaffirmed that intermediate scrutiny standard-of-review for classifications based on gender. *See Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 273, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979); *see also Caban v. Mohammed*, 441 U.S. 380, 388, 99 S. Ct. 1760, 60 L. Ed. 2d 297 (1979). Importantly, the intermediate standard of review is that same regardless of whether women or men are disadvantaged by the classification. *See Orr*, 440 U.S. at 279.

The *Prescott* Court did not state with specificity how the government could achieve its objectives through 14 V.I.C. §298(5) or even what those objectives were. Additionally, *Prescott* incorrectly applied rational basis review "despite binding Supreme Court precedent mandating heightened scrutiny for gender-based classifications." *Simmonds*, 58 V.I. at 32. Therefore, this Court declines to follow *Prescott*.[3]

### ii. For the purposes of 14 V.I.C. § 298(5), women are similarly situated to men

The People argues that men and women are not similarly situated when it comes to being victims of domestic or other physical violence. "[M]aking aggravated-assault domestic violence a felony is substantially related to the government interest of protecting women against acts of domestic violence. Women are disproportionally victims of domestic violence." *Opposition*, at 10. The People claims, without support, that men assault women nine times more than women assault men. Citing biological factors, such as strength and stature, the People claims that "in

---

[3] The Court likewise declines to follow the above-referenced earlier Territorial Court case of *Government v. Smith*. Like *Prescott*, the defendant in *Smith* also claimed that 14 V.I.C. § 298(5) "created a classification based upon sex which [ran] afoul of the Fourteenth Amendment and denie[d] him equal protection of the law." *Government of the V.I. v. Smith*, Crim. No. 166/1979 (V.I. Terr. Ct.) (Mem. Op. at 2, Jan. 3, 1980) (unreported). The Court held that 14 V.I.C. § 298(5) "exemplifies a considered legislative judgment that females warrant a special protection from male attackers..." *Id. Smith* also examined 14 V.I.C. § 298(5) using a rational basis review.

2011, only a small number of women were even charged by the Attorney General's office with simple assault-domestic violence where the victim was a male." *Id.* The Equal Protection Clause, it argues, "does not command that all persons be treated alike but, rather, 'direct[s] that all persons similarly situated should be treated alike.' " *Id., citations omitted.* The People contends that because men and women are not similarly situated in terms of being victims of sexual abuse, the law does not have to treat them as if they were similarly situated. For the reasons that follow, the People's argument is unpersuasive.

 The United States Supreme Court has distinguished between permissible and impermissible gender-based discrimination. A statute that is based upon outmoded stereotypes of women, such as assumptions concerning female weakness and dependency, is unconstitutional. A statute "is forbidden by the Constitution, at least when supported by no more substantial justification than 'archaic and overbroad' generalizations or 'old notions' . . . that are more consistent with 'the role-typing society has long imposed,' than with contemporary reality." *Califano v. Goldfarb*, 430 U.S. 199, 207, 97 S. Ct. 1021, 51 L. Ed. 2d 270 (1977), *citations omitted.*

The Supreme Court has invalidated laws characterized by stereotypes and generalizations. In several rulings in 1977, the Court invalidated a segment of the Social Security Act which apportioned survivor's benefits differently depending on the beneficiary's gender. As in *Goldfarb*, the Court determined that the apportionment of benefits was predicated on outdated stereotypes concerning the earning potential of females compared to males. *Id.; see also Califano v. Silbowitz*, 430 U.S. 924, 97 S. Ct. 1539, 51 L. Ed. 2d 768 (1977); *Jablon v. Califano*, 430 U.S. 924, 97 S. Ct. 1539, 51 L. Ed. 2d 768 (1977); *Railroad Retirement Board v. Kalina*, 431 U.S. 909, 97 S. Ct. 2164, 53 L. Ed. 2d 220 (1977).

The People correctly notes that some types of disparate treatment based on gender are permissible. In *Califano v. Webster*, 430 U.S. 313, 97 S. Ct. 1192, 51 L. Ed. 2d 360 (1977), the Supreme Court held that a portion of the Social Security Act which treated men less favorably than women was constitutional because it was enacted "to compensate for particular economic disabilities suffered by women." *Id.*, at 320.[4] In the Court's

---

[4] Retirement insurance benefits permitted women to exclude from the benefit computation her average monthly wage in more lower earning years than a similarly situated male wage

opinion, "allowing women, who as such have been unfairly hindered from earning as much as men, to eliminate additional low-earning years from the calculation of their retirement benefits works directly to remedy some part of the effect of past discrimination." *Id.*, at 318. This permissible disparate treatment reflected the Court's tolerance for laws which remediate prior discrimination.

The Supreme Court examined a California criminal statute which punished only men who engaged in consensual sex with a female under the age of eighteen for the crime of statutory rape. In *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S. Ct. 1200, 67 L. Ed. 2d 437 (1981), the Court upheld this statute on the basis that men and women were not similarly situated.

> Because virtually all of the significant harmful and inescapably iden-
> tifiable consequences of teenage pregnancy fall on the young female,
> a legislature acts well within its authority when it elects to punish only
> the participant who, by nature, suffers few of the consequences of his
> conduct. It is hardly unreasonable for a legislature acting to protect
> minor females to exclude them from punishment. Moreover, the risk
> of pregnancy itself constitutes a substantial deterrence to young fe-
> males. No similar natural sanctions deter males. *Id.*, at 473.

According to the Court, females bear all of the risks when they engage in underage sexual acts. Since these risks are only shared by one gender, for the purposes of California's statutory rape statute, men and women are not simi-larly situated and can be treated differently under the law.

█ The Supreme Court's holding in *Orr v. Orr* well summarizes the current Constitutional distinction between permissible and impermissible gender discrimination. The Court reaffirmed its holding in *Webster* while offering a distinction between a statute that is substantially related to the government's purpose and one which is impermissibly based on traditional stereotypes.

> Legislative classifications which distribute benefits and burdens
> on the basis of gender carry the inherent risk of reinforcing the ste-

---

earner. "This would result in a slightly higher 'average monthly wage' and a correspondingly higher level of monthly old-age benefits for the retired female wage earner." *Webster*, 430 U.S. at 316.

reotypes about the "proper place" of women and their need for special protection. Thus, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination must be carefully tailored. Where, as here, the State's compensatory and ameliorative purposes are as well served by a gender-neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex. *Orr*, 440 U.S. at 283, *citation omitted*.

The Supreme Court has concluded that statutes which are remedial in nature, seeking to "remedy some part of the effect of past discrimination" are substantially related to an important governmental purpose. *Webster*, 430 U.S. at 318. Additionally, statutes which operate purely on the scientific, non-stereotypical grounds that men and women are not similarly situated are permissible in limited circumstances. *See, e.g., Michael M.*, 450 U.S. at 473.

However, certain statutes can mistakenly categorize women as sufficiently dissimilar from men to warrant impermissible disparate treatment. Such statutes are often based on "reinforcing the stereotypes about . . . women and their need for special protection," make unscientific assumptions about the perceived differences between the sexes, and are not substantially related to an important governmental purpose. *Orr*, 440 U.S. at 283; *see also Webster*, 430 U.S. at 320.

In examining 14 V.I.C. § 298(5), it is clear that this statute is based on stereotypes, blanket generalizations, unsupported data and unscientific assumptions. As the Court in *Simmonds* noted "domestic violence remains a difficult and disturbing social problem that must be eradicated. But as [the Defendant] correctly pointed out, '[d]omestic violence is a problem for everybody — men, women, children.' " *Simmonds*, 58 V.I. at 36.

Without any support in the record, the People claims that "[w]omen are disproportionally victims of domestic violence" and that men assault women nine times more than women assault men. *Opposition*, at 10, 11. In *Simmonds*, the Court rejected this assertion based upon the record before the Court. The Defendant argued that "[t]he research is now overwhelming that women are as likely to abuse," *citing* Amanda J. Schmesseer, *Note, Real Men May Not Cry, But They are Victims of Domestic Violence: Bias in Application of Domestic Violence Laws*, 58 SYRACUSE L. REV. 171, 191-92 (2007). "Section 298(5) perpetuates this problem . . . The evil is violence not gender. . . ." *Simmonds*, 58 V.I. at 38.

193

The goal of domestic violence laws is to prevent domestic violence in all circumstances and in all forms. *Simmonds* also noted a lecture given in the Virgin Islands by Justice Désirée Bernard, the first female judge to sit on the Caribbean Court of Justice, who discussed the gender-neutrality of domestic violence: "[w]hen one considers the whole issue of gender-based violence one immediately conjures up in one's mind violence against women *despite the gender-neutral term . . ." Id.,* 58 V.I. at 39.[5] Domestic violence, she explained, "include[s] the all-pervasive scourge of violence committed *against both male and female victims." Id.,* (emphasis from *Simmonds*).

Title 14, § 298(5) stands in direct contradiction to the gender-neutral goals of domestic violence laws. In fact, 14 V.I.C. § 298(5) assumes that males are the problem. This is exactly the type of discrimination that the Supreme Court has determined violates the Equal Protection Clause and is, therefore, unconstitutional.

Title 14, § 298(5) is neither remedial nor is it intended to "remedy some part of the effect of past discrimination." *Webster,* 430 U.S. at 318. It works in the present and future, supposedly acting to deter men from assaulting women, including their female domestic partners.[6] The law does not protect individuals who are dissimilarly situated and, therefore, the law cannot treat classes of people differently.

Ours is unlike the setting in *Michael M.,* where the Court determined that, for purposes of the California statutory rape law, the biological fact that only women reproduce provided a meaningful basis for disparate treatment between the sexes. *See Michael M.,* 450 U.S. at 473. Here, the suggested differences between men and women are based upon general assumptions about size and strength that are fraught with frequent exceptions. ("Generally, biologically men are physically stronger than women. . ." *Opposition,* at 7; ". . . the significant difference in physical

---

[5] Citing the lecture given by Hon. Mme. Justice Désirée Bernard, Carib. Ct. J., entitled Confronting Gender-Based Violence in the Caribbean, Remarks at the Fifth Biennial Lucille Mathurin Mair Public Lecture. Can be found at: http://www.caribbeancourtofjustice.org/old/papers_addresses.html.)

[6] *Prescott* concludes that 14 V.I.C. § 298(5) serves as "punishment necessary for deterrence." *Prescott,* 18 V.I. at 112. The People implies that this deterrence is the manner by which 14 V.I.C. § 298(5) is substantially related to an important governmental purpose. *Opposition,* p. 10 ("Thus, in order to achieve the goal of protecting domestic violence victims, harsher sanctions are needed." *Id.,* at 9.).

structure and frequency of male crimes against women warranted the statute." *Id.*, at 9; "Moreover, males are capable of inflicting a great deal more harm than females." *Id.*, at 11.)

Title 14, § 298(5) reinforces "the stereotypes about . . . women and their need for special protection. It affirms outmoded stereotypes by making unscientific assumptions setting up disparate treatment that are not substantially related to an important governmental purpose. *See Orr,* 440 U.S. at 283; *see also Webster,* 430 U.S. at 320.

As articulated by Justice Désirée Bernard, domestic assaults involving male victims are on the rise. The unsupported and stereotypic assumption of the People that men are larger and stronger than women ignores the plain reality that the assumption is untrue as to a statistically significant percentage of the adult population of this Territory. The People's stubborn insistence that 14 V.I.C. § 298(5) can survive this constitutional analysis is based, in essence, on the premise that women are the weaker sex requiring protection through statutory inequality. Without any proof in the record by statistical analysis or otherwise of the differing physical characteristics of the sexes, or of the predominance of assaults by men against women, this Court cannot accept that the facial discrimination set out by the words of the statute is justifiable based upon outmoded stereotypes and unscientific assumptions.

For purposes of 14 V.I.C. § 298(5), women are similarly situated to men and it cannot be said that the disparity between different classifications of person in the statute is substantially related to the government's purpose of deterring domestic and other physical violence. As has been successfully accomplished in the domestic violence statutory arena (Title 16 V.I.C. Chapter 2), there is absolutely no reason that a gender-neutral statute cannot be crafted to address these important governmental purposes.

## CONCLUSION

Defendant argues that the charge against him in Count One of the Information based upon 14 V.I.C. § 298(5) violates his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment in that the statute sets forth an enhanced penalty for a male committing simple assault on a woman without reciprocal treatment for an offending female. The People responds that 14 V.I.C. § 298(5) is about size, not about gender disparities. It contends that the statute's purpose is to protect

smaller individuals from the aggression of larger individuals more likely to inflict harm because of these size differences. The People's position ignores the plain meaning of the words of the statute. Under 14 V.I.C. § 298(5), a man who assaults a woman is guilty of aggravated assault, however a woman who assaults a man is not guilty of aggravated assault, regardless of the respective sizes of perpetrator and victim. The statutory language is silent concerning size differences, and the People's argument is without merit.

 The statute violates the Equal Protection Clause of the United States Constitution. The legislative history fails to establish that the disparity in treatment between the sexes has as its purpose protecting women from domestic or other physical assault. The record is insufficient to permit a finding that the Legislature specifically intended to further an important governmental purpose, the protection of female victims from male predators, by subjecting men to "an aggravating factor when females are the victim." While protecting everyone from domestic assault is an important governmental purpose, the Court cannot find that this or any other important governmental interest is served by the disparate treatment afforded men and women accused of committing assault and battery.

Virgin Islands case law, in McGowan and Simmonds, correctly applying the heightened intermediate scrutiny to an analysis of 14 V.I.C. § 298(5), has held that the inequality of treatment between the sexes is not substantially related to any important governmental purpose.

 As written, 14 V.I.C. § 298(5) reinforces stereotypes and makes unscientific assumptions concerning the need to protect women through inequality under law. To the contrary, for the purposes of 14 V.I.C. § 298(5), men and women are similarly situated and, as such, 14 V.I.C. § 298(5) is not substantially related to an important governmental purpose, and is unconstitutional in denying equal protection to men and women under the laws of the United States and the Virgin Islands. Accordingly, Defendant's Motion will be granted.

An appropriate Order will issue simultaneously herewith.