**PATRICK L. WEBSTER, JR., Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2012-0012
Supreme Court of the Virgin Islands
March 5, 2014

667

KELE ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

ATIIM D. ABRAHAM, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(March 5, 2014)

CABRET, *Associate Justice.* Patrick Webster, Jr., was convicted in the Superior Court of aggravated assault and battery and disturbing the peace, both as acts of domestic violence, and unauthorized use of a vehicle.

Webster appeals, arguing that the aggravated assault statute contains unconstitutional sex-based classifications and that the evidence was insufficient to establish the other charges. For the reasons that follow, we reverse Webster's assault conviction and affirm his convictions for disturbing the peace and unauthorized use of a vehicle.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2011, at approximately 1 a.m., Webster went into the bedroom of his mother Vernice Webster while she was sleeping to ask for the keys to her car. When she refused, Webster searched the room for the keys while his mother went to the kitchen. When he could not find the keys, Webster grabbed Vernice by the throat and the wrap she was wearing, pulling her back into the bedroom and then repeatedly pushing her down onto her bed, demanding the keys. Still refusing to give Webster the keys, Vernice returned to the kitchen, ending up on the floor with Webster standing over her holding a wine bottle.[1] Webster once again dragged his mother into the bedroom and threw her onto her mattress several more times. Vernice finally retrieved the keys from a bathroom cabinet and gave them to Webster, who disabled the house phone and took Vernice's cell phone before leaving with the car.

After he left, Vernice went to a neighbor to call 911. Once police arrived, they noticed bruises and minor scratches on her collarbone and forearm, and observed that the bedroom was "ransacked." The responding officers took Vernice to her sister's house for the night because she was afraid that Webster would return to the house. She returned home in the morning with Officer Vernon Williams, where they found the car outside and Webster asleep in his bedroom. Williams then arrested Webster. The following day, Vernice went to the hospital complaining of back pain caused by the altercation.

On May 23, 2011, the People filed a five-count Information against Webster, charging him with third-degree assault, the use of a dangerous weapon during the commission of a third degree assault, aggravated assault and battery, and disturbing the peace — all charged as acts of domestic violence under 16 V.I.C. § 91(b) — as well as the unauthorized use of a vehicle. The Superior Court held a bench trial on November 2,

---

[1] Vernice testified that she could not recall how she ended up on the floor.

2011, during which the People called Vernice, who testified to the events of May 4, 2011, Carolyn Watley, a 911 District Manager who laid the foundation for admitting the 911 recording into evidence, Denise Berry, the Custodian of Medical Records at Schneider Regional Medical Center, who laid the foundation for the admission of Vernice's medical records from the day after the incident, and Officers Adora John and Alester Carty, who responded to Vernice's 911 call. After this testimony, the People rested and Webster moved for a judgment of acquittal, arguing that the evidence was insufficient to support a conviction on any of the charges. The court reserved decision on third-degree assault and the use of a dangerous weapon during this crime, and denied the motion on the remaining counts. Webster then testified that Vernice had agreed to give him the keys but could not find them, causing Webster and Vernice to search through the house. After this testimony, the defense rested.

After the trial concluded, the court held that there was not enough evidence to support a conviction for third-degree assault with a deadly weapon or the use of a dangerous weapon during a crime of violence, but entered convictions against Webster for aggravated assault and battery, disturbing the peace, and unauthorized use of a vehicle. The court also found that aggravated assault and disturbing the peace were acts of domestic violence as defined by 16 V.I.C. § 91(b). In a January 27, 2012 Judgment and Commitment, the Superior Court sentenced Webster to a suspended ten-month prison sentence and a $1,000 fine for aggravated assault and battery, a concurrent sixty-day sentence for disturbing the peace, a concurrent one-year suspended sentence for unauthorized use of a vehicle, and placed him on supervised probation for one year. Webster filed a timely notice of appeal on February 8, 2012.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The Superior Court's January 27, 2012 Judgment and Commitment is a final order over which we may exercise jurisdiction. *George v. People*, 59 V.I. 368, 376-77 (V.I. 2013) (citing *Brown v. People*, 56 V.I. 695, 698 (V.I. 2012)).

## III. DISCUSSION

Webster argues that his conviction for aggravated assault must be reversed because the statute under which he was convicted, 14 V.I.C.

§ 298(5), violates constitutional principles assuring equal protection of the laws. He further asserts that the evidence was insufficient to support his convictions for disturbing the peace and unauthorized use of a vehicle. We address each argument in turn.

## A. 14 V.I.C. § 298(5)

For the first time on appeal, Webster argues that because 14 V.I.C. § 298(5) enhances simple assault to aggravated assault based only on the respective sexes of the attacker and the victim, it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[2] Because he did not raise this argument before the Superior Court, we review it only for plain error. V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal; provided, however, that when the interests of justice so require, the Supreme Court may consider and determine any question not so presented."). "Under plain error review, there must be an error, that was plain, that affected the defendant's substantial rights." *Cascen v. People*, 60 V.I. 394, 415 (V.I. 2014). "Even then, this Court will only reverse where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *Williams v. People*, 59 V.I. 1043, 1047 (V.I. 2013) and quoting in part from *Francis v. People*, 52 V.I. 381, 390-91 (V.I. 2009)) (internal quotation marks omitted). In conducting this review, we must first determine whether the Superior Court erred by entering a conviction against Webster under an unconstitutional statute.

The Superior Court entered the conviction under section 298, which enumerates nine aggravating circumstances that enhance a simple assault to an aggravated assault. *See* 14 V.I.C. § 299(2) ("[w]hoever commits . . . an assault or battery unattended with circumstances of aggravation" commits only simple assault). Webster was convicted under the aggravating circumstance providing that "[w]hoever commits an assault

---

[2] The Fourteenth Amendment applies to the Virgin Islands Government to the same extent it applies to the governments of the fifty states under section 3 of the Revised Organic Act of 1954. 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 87-88 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1) ("extend[ing] to the Virgin Islands" the Due Process and Equal Protection Clauses of the Fourteenth Amendment, which "shall have the same force and effect there as in the United States or in any State of the United States").

and battery . . . being an adult male, upon the person of a female . . . shall be fined not more than $500 or imprisoned not more than 1 year." 14 V.I.C. § 298(5). Webster argues that by making his sex an aggravating factor, section 298(5) denies him equal protection of the law.

██ "The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.' " *Lawrence v. Texas*, 539 U.S. 558, 579, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003) (quoting *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). Here, it is evident that section 298(5) creates a sex-based classification on its face, upgrading an assault from simple to aggravated in all instances in which the defendant is male and the victim is female. While most statutory classifications — such as those contained in tax policy and economic regulations — must meet only rational basis review, *see Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (rational basis review is satisfied by "any reasonably conceivable state of facts that could provide a rational basis for the classification"), an explicitly sex-based statutory classification — like those based on race, national origin, or alienage — must satisfy heightened constitutional scrutiny. *Orr v. Orr*, 440 U.S. 268, 278-79, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979) (citing *Reed v. Reed*, 404 U.S. 71, 75, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971)); *see also City of Cleburne*, 473 U.S. at 440.

█ In the case of a sex-based classification, this heightened level of scrutiny is intermediate. *United States v. Virginia*, 518 U.S. 515, 524, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996). Unlike rational basis review — where it is the defendant's burden to "negat[e] every conceivable basis that might support the government's statutory classification," *McIntosh v. People*, 57 V.I. 669, 686 n.15 (V.I. 2011) — intermediate scrutiny requires the People to carry the burden of establishing that there is an "exceedingly persuasive justification" for the classification by showing that it "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Virginia*, 518 U.S. at 524 (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982)). We must closely examine the People's justifications "free of fixed notions concerning the roles and abilities of males and females," as generalizations and stereotypes about the respective characteristics of

673

men and women cannot satisfy intermediate scrutiny. *Mississippi Univ. for Women,* 458 U.S. at 724-25; *see also Virginia,* 518 U.S. at 533.

■ The People concedes that it bears the burden of demonstrating the constitutionality of section 298(5) and asserts that "the statute identifies men because of the demonstrable fact that they are physically different from women." The People also contends that "[t]he Government's objective in having a gender based statute is to protect women from physically aggressive and overpowering men as was the situation in this case." The People further insists that the "[L]egislature could easily have determined that assaults and batteries by physically larger and stronger men are more likely to cause greater physical injuries to women than similar assaults by females." While the People may be correct that the Legislature *could* have enacted section 298(5) with the aim of protecting women from assaults by physically larger and stronger men, a justification "hypothesized or invented *post hoc* in response to litigation" cannot meet intermediate scrutiny. *Virginia,* 518 U.S. at 533. Instead, "a tenable justification must describe actual state purposes, not rationalizations for actions in fact differently grounded." *Id.* at 535-36.

The language of 14 V.I.C. § 298(5) was initially enacted in title 4, section 32 of the 1921 Codes, and reenacted when the Legislature repealed the 1921 Codes in 1957.[3] *People v. Simmonds,* 58 V.I. 3, 14-17 (V.I. Super. Ct. 2012) ("According to . . . the 1921 Codes, '[a]n assault and battery becomes aggravated . . . [w]hen committed by an adult male upon the person of a female . . . .' "). The People makes no attempt to establish that its hypothesized rationale was the actual reason underlying the enactment of this sex-based classification when it was first enacted in 1921 or reenacted in 1957. Furthermore, the Superior Court of the Virgin Islands has rejected this rationale on three separate occasions, recently noting that "nothing in the legislative history of 14 V.I.C. § 298(5) mentions physical differences between the genders or justifies penalizing men more severely for acts of which both sexes are capable." *People v. Lake,* 59 V.I. 178, 187-188 (V.I. Super. Ct. 2013) (holding that 14 V.I.C.

---

[3] Prior to 1957, "[s]eparate codes were enacted for the Municipality of St. Thomas and St. John and for the Municipality of St. Croix." *Simmonds,* 58 V.I. at 14. "In 1957, the Legislature repealed the 1921 Codes, adopting instead a comprehensive code governing the entire Territory. . . . The 1957 Code retained the earlier assault and battery statutes, including the aggravated assault and battery statute." *Id.* at 15.

§ 298(5) violates equal protection) (quoting *People v. McGowan*, 56 V.I. 3, 19 (V.I. Super. Ct. 2012)); *see also Simmonds*, 58 V.I. at 40-42 (same); *Charleswell v. People*, D.C. Crim. App. No. 2006-28, slip. op. at 6 (D.V.I. App. Div. Nov. 5, 2013) ("the [c]ourt is unable to locate any statutory text or legislative history that articulates either of the Government's proposed rationales" justifying section 298(5)).

 Even if we were to assume that the People's hypothesized rationale for section 298(5) was the true motivation behind its enactment, the statute would still fail intermediate scrutiny. While it is undoubtedly true that the Legislature "can take into account . . . physical differences when classifying crimes relating to physical violence," section 298(5) does not do this. Instead, this provision makes any assault committed by a man upon a woman an aggravated assault regardless of the physical differences between the attacker and the victim, providing no additional protections to a man assaulted by a physically stronger woman, or a woman assaulted by a physically stronger woman. By using sex as a proxy for the relative physical characteristics of the attacker and the victim, section 298(5) rests entirely on "archaic and stereotypic notions" that have been specifically rejected by the United States Supreme Court. *Mississippi Univ. for Women*, 458 U.S. at 725. As the Supreme Court explained, "if the statutory objective is to . . . 'protect' members of one gender because they are presumed to suffer from an inherent handicap or to be innately inferior, the objective itself is illegitimate." *Id.* Legislative classifications such as this "carry the inherent risk of reinforcing stereotypes about the 'proper place' of women and their need for special protection." *Orr*, 440 U.S. at 283. Finally, it would seem apparent that if the Legislature's objective was to take into account "physical differences when classifying crimes relating to physical violence," this purpose would have been better served by enacting a statute that actually takes into account physical differences in classifying violent crimes. And when governmental objectives are as well-served by a sex-neutral law that does not "carr[y] with it the baggage of sexual stereotypes," the government "cannot be permitted to classify on the basis of sex." *Id.* Therefore, even if the Legislature enacted 14 V.I.C. § 298(5) with the objective of providing greater protections to women who are attacked by physically stronger men, because the statute fails to take into account the relative physical prowess of the attacker and the victim, we cannot say that the

675

"discriminatory means employed are substantially related to the achievement of those objectives." *Virginia*, 518 U.S. at 524.

In arguing that section 298(5) does not violate equal protection, the People relies heavily on *Gov't of the V.I. v. Prescott*, 18 V.I. 110 (V.I. Super. Ct. 1981), which rejected an identical equal protection challenge to section 298(5). But *Prescott* requires little comment. As noted by later Superior Court opinions explicitly rejecting *Prescott*, it applied rational basis review long after the United States Supreme Court held that sex-based statutory classifications must satisfy intermediate scrutiny. *See Lake*, 2013 V.I. LEXIS 59, at *17 (observing that "the *Prescott* Court utilized a rational basis review"); *Simmonds*, 58 V.I. at 31 (*"Prescott . . .* subjected Section 298(5) to a rational basis review."). The same can be said of the other cases the People relies on in support of section 298(5). *See, e.g., Buchanan v. State*, 480 S.W.2d 207, 209 (Tex. Crim. App. 1972) ("In the instant case, we have no difficulty in perceiving a rational basis for the different treatment afforded to adult males in the case of assaults or batteries committed upon adult females."). The only recent case cited is *State v. Wright*, 349 S.C. 310, 563 S.E.2d 311 (2002), in which the South Carolina Supreme Court upheld a sex-based sentencing enhancement. But despite appropriately identifying intermediate scrutiny, the *Wright* court relied almost entirely on cases utilizing rational basis review in upholding that statute. *See id.* at 313-15 (citing *Buchanan*, 480 S.W.2d at 209; *State v. Gurganus*, 39 N.C. App. 395, 250 S.E.2d 668, 672-73 (1979); *People v. Silva*, 27 Cal. App. 4th 1160, 33 Cal. Rptr. 2d 181, 185-86 (1994); *Muller v. Oregon*, 208 U.S. 412, 420-23, 28 S. Ct. 324, 52 L. Ed. 551 (1908)); *see also Wright*, 563 S.E.2d at 314 (Toal, C.J., concurring in result only) ("the cases relied upon by the majority are based on out-dated generalizations of the sexes no longer favored" in equal protection jurisprudence).

■ Accordingly, by providing that any assault committed by a male upon a female is automatically aggravated in nature, 14 V.I.C. § 298(5) violates the Equal Protection Clause of the Fourteenth Amendment, and the Superior Court committed error in entering a conviction against Webster under this section.

Despite this error, because Webster failed to raise the constitutionality of section 298(5) before the Superior Court, we will only exercise our discretion to reverse his conviction if the Superior Court's error was plain and affected Webster's substantial rights, and affirming Webster's

conviction would "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Cascen*, 2014 V.I. Supreme LEXIS 3, at *35; *see also Rawlins v. People*, 58 V.I. 261, 271 n.4 (V.I. 2013) (issue of constitutionality of a portion of a Virgin Islands statute was subject to plain error review where "the record contain[ed] no evidence that [the defendant] ever objected to [the statute] on constitutional grounds").

 While this Court has not previously addressed the constitutionality of 14 V.I.C. § 298(5),[4] "it is expected that [the Superior Court] knows and applies settled law." *Hightree v. People*, 55 V.I. 947, 954 (V.I. 2011). In the case of sex-based statutory classifications, the United States Supreme Court has repeatedly instructed that courts must apply heightened constitutional scrutiny, requiring a careful examination of whether an "exceedingly persuasive justification" motivated the Legislature's use of this otherwise impermissible classification. *See Virginia*, 518 U.S. at 524, 531 (courts must apply "skeptical scrutiny" to sex-based discrimination); *Mississippi Univ. for Women*, 458 U.S. at 725 ("Care must be taken in ascertaining whether the statutory objective . . . reflects archaic and stereotypic notions."); *Orr*, 440 U.S. at 278 (a "statutory scheme provid[ing] that different treatment be accorded . . . on the basis of . . . sex . . . establishes a classification subject to scrutiny under the Equal Protection Clause") (citing *Reed*, 404 U.S. at 75). Given this longstanding precedent from the United States Supreme Court, the Superior Court's error in entering a conviction under section 298(5) — a statute containing an explicit sex-based classification — is plain under current law.[5] *See United States v. Knowles*, 29 F.3d 947, 951 (5th Cir.

---

[4] *See Marcelle v. People*, 55 V.I. 536, 541-42 (V.I. 2011) (declining to address the constitutionality of 14 V.I.C. § 298(5) where the defendant only challenged the sufficiency of the evidence on appeal); *Azille v. People*, 59 V.I. 215, 227 (V.I. 2012) (declining to address the constitutionality of 14 V.I.C. § 298(5) where the defendant "concede[d] the Court should not address this argument" and reversing on other grounds).

[5] This situation is distinct from that presented in *Hightree v. People*, 55 V.I. 947, 953-55 (V.I. 2011), and *Sonson v. People*, 59 V.I. 590, 606 (V.I. 2013), in which both appellants argued for the first time on appeal that the Virgin Islands firearm registration scheme violated the Second Amendment. In declining to exercise our discretion to review those claims, we emphasized that the United States Supreme Court has unequivocally stated that reasonable firearm registration schemes are not constitutionally suspect as a result of that Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010). *See Hightree*, 55 V.I. at 955 (noting that "language in both decisions of the Supreme Court

1994) ("It is self-evident that basing a conviction on an unconstitutional statute is both 'plain' and an 'error' as [the United States Supreme Court] defines those terms."); *United States v. Coil*, 442 F.3d 912, 916 (5th Cir. 2006) ("A conviction based upon an unconstitutional statute is both 'plain' and 'error.' "); *Crutchfield v. State*, 627 P.2d 196, 199 (Alaska 1980) ("If the regulation is unconstitutional, [the defendant's] conviction, to the extent that it is based on the regulation, constitutes plain error.").

■■ Furthermore, there is no doubt that this error affected Webster's substantial rights, *see Fahie v. People*, 59 V.I. 505, 511 (V.I. 2013) ("[t]o affect . . . substantial rights, the error must [have] affected the outcome of the trial"), and that affirming Webster's conviction under a facially unconstitutional statute would clearly affect the integrity and public reputation of judicial proceedings. *See United States v. Young*, 470 U.S. 1, 15, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) ("[T]he plain-error exception [should be] 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982))); *White v. United States*, 399 F.2d 813, 822 (8th Cir. 1968) ("[I]t would be improper to affirm a conviction if the statute under which the prosecution is brought is unconstitutional and . . . imprisonment under such circumstances would be a clear miscarriage of justice."). Accordingly, because the Superior Court committed plain error in entering a conviction against Webster under a statute that violates the Equal Protection Clause of the Fourteenth Amendment, we reverse Webster's conviction for aggravated assault under 14 V.I.C. § 298(5).

## B. Sufficiency of the Evidence

Webster also challenges the sufficiency of the evidence supporting his convictions for disturbing the peace and unauthorized use of a vehicle. "In reviewing a challenge to the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People, and affirm the conviction if any rational trier of fact could have found the

---

indicat[es] that the Court did not intend to invalidate all gun regulatory schemes"); *Sonson*, 2012 V.I. Supreme LEXIS 90, at *31 ("Both [*Heller* and *McDonald*] expressly authorized the regulation of handguns.").

essential elements of the crime beyond a reasonable doubt." *Cascen*, 60 V.I. at 403 (quoting *George*, 2013 V.I. Supreme LEXIS 37, at *25) (internal quotation marks omitted).

### 1. *Disturbing the peace*

██ Webster's arguments concerning this conviction are varied and largely incomprehensible. Without citing any case law, he first asserts that the Superior Court denied him due process of law in entering this conviction. This argument is never fully articulated, let alone supported "by argument and citation to legal authority," and therefore is waived. V.I.S.CT.R. 22(m). He then asserts that "the prosecutor did not charge . . . disturbance of the peace in violation of title 14, section 622 of the Virgin Islands Code." But the People did charge Webster with disturbing the peace in violation of 14 V.I.C. § 622(1). Webster next argues that disturbing the peace in this case was not an act of domestic violence as defined by 16 V.I.C. § 91(b)(11) — which provides that threatening conduct can constitute domestic violence — because the People failed to prove that Webster threatened Vernice. But the People charged Webster with disturbing the peace as an act of domestic violence under 16 V.I.C. § 91(b)(10) — providing that harassing conduct can constitute domestic violence — and Webster makes no arguments regarding section 91(b)(10) until his reply brief. Therefore, any argument in this regard is also waived. *Christopher v. People*, 57 V.I. 500, 513 n.7 (V.I. 2012). Despite Webster's waiver of these arguments, because he mentions in passing his belief that "the prosecutor . . . did not prove" the elements of disturbing the peace, we construe his arguments as a challenge to the sufficiency of the evidence.

██ Webster was convicted of disturbing the peace in violation of 14 V.I.C. § 622(1), which provides:

> Whoever maliciously and willfully . . . disturbs the peace or quiet of any village, town, neighborhood or person, by loud or unusual noise, or by tumultuous offensive conduct, or threatening, traducing, quarreling, challenging to fight or fighting . . . shall be fined not more than $100 or imprisoned not more than 90 days, or both.

Accordingly, in order to obtain a conviction in this case, the People were required to prove that Webster (1) maliciously and willfully disturbed

Vernice's "peace or quiet," (2) "by loud or unusual noise, or by tumultuous offensive conduct, or threatening, traducing, quarreling, challenging to fight or fighting." Vernice testified that Webster woke her up at 1 a.m. demanding the keys to her car, and when she refused, an altercation ensued, during which Webster "ransacked" Vernice's bedroom in search of the keys. When he failed to find the keys, Webster grabbed Vernice by a piece of her clothing and pulled her into the bedroom, throwing her down onto her mattress several times, still demanding the keys. This testimony was sufficient to support Webster's conviction for disturbing the peace, as it is clear that Webster's conduct disturbed Vernice's peace or quiet by waking Vernice up in the middle of the night to demand the keys to her car, and then attacking her when she refused to turn them over. *Murrell v. People*, 54 V.I. 327, 332-33 (V.I. 2010) (holding that the evidence was sufficient to sustain a conviction for disturbing the peace where the defendant committed "an actual criminal assault"); *see also State v. Poe*, 139 Idaho 885, 88 P.3d 704, 715 (2004) ("The word 'quarreling' [in a statute substantially identical to 14 V.I.C. § 622] means engaging in 'an angry dispute or altercation.' "); *State v. Starsky*, 106 Ariz. 329, 475 P.2d 943, 945 (1970) ("one may be guilty of disturbing the peace [under a similarly worded statute] if he engages in . . . violent conduct"). We therefore affirm Webster's conviction for disturbing the peace.

### 2. *Unauthorized use of a vehicle*

Webster next argues that the evidence was insufficient to support his conviction for the unauthorized use of a vehicle under 14 V.I.C. § 1382. Section 1382 provides that "[a] person not entitled to possession of a vehicle who, without the consent of the owner and with intent to deprive him, temporarily or otherwise, of the vehicle or its possession, takes, uses or drives the vehicle is guilty of a felony." Webster's sufficiency challenge rests solely on the contention that the People failed to prove he was not entitled to possess the car because Vernice purportedly testified she was happy to give the keys to Webster.

At trial, Vernice testified that she had initially refused to let Webster take the car when he asked for the keys. After her refusal, Webster continued to demand the keys and began searching Vernice's bedroom. When he failed to find the keys, Webster grabbed her by a piece of her clothing, pulled her into the bedroom, threw her down onto her mattress, and demanded the keys. Vernice testified that after Webster

continued demanding the keys and repeatedly throwing her down onto her mattress, she finally gave the keys to him and was "happy" to do so "because I asked him to stop and he did not stop." Based on this testimony, the Superior Court — sitting as the trier of fact — found Webster "was not authorized to use the vehicle"[6] and that Vernice only gave Webster the keys because "she did not know what was going to happen to her if she did not give him the keys," and therefore "this was not a true consent." Although Webster is correct that Vernice testified that she was happy to give him the keys, she also testified that she gave Webster the keys only after he physically attacked her. Therefore, we cannot say the Superior Court's finding that Vernice did not give "true consent" to Webster's use of the car was "completely devoid of minimum evidentiary support or [had] no rational relationship to the supportive evidentiary data." *In re Estate of Small*, 57 V.I. 416, 430 (V.I. 2012) (identifying the standard for holding a finding of fact to be clearly erroneous); *see also Williams v. People*, 55 V.I. 721, 731 (V.I. 2011) (defining consent as the "acquiescence by a person of age or with requisite mental capacity who is not under duress or coercion").

■■■■■■■ And even though Webster gave a vastly different account of what occurred that night during his testimony — asserting that Vernice agreed to allow him to use the car immediately after his initial request — the Superior Court credited Vernice's testimony over Webster's, and "[a] sufficiency challenge is not a vehicle to relitigate credibility arguments that were unpersuasive" to the trier of fact. *Billu v. People*, 57 V.I. 455, 466 (V.I. 2012); *see also Connor v. People*, 59 V.I. 286, 290-291 (V.I. 2013) (holding that the testimony of a single witness is sufficient to support a conviction "even if it is contradicted by the accused"). There-

---

[6] Webster asserts in his reply brief that the evidence was insufficient because the Superior Court "made no findings of fact regarding Webster being entitled to possession of the vehicle." But the court did explicitly find based on Vernice's testimony that Webster "was not authorized to use the vehicle." Webster also insists that as Vernice's son, he was "impliedly permitted to use his mother's car as a matter of public policy," citing provisions of the Virgin Islands Code requiring minimum liability car insurance. But not only did Webster waive this argument by failing to raise it with the Superior Court, he also fails to explain how these provisions entitled him to use a vehicle owned by his mother, nor did he ever dispute the ownership of the vehicle at trial. V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal.").

fore, we have no trouble concluding that the evidence was sufficient to support Webster's conviction for unauthorized use of a vehicle.[7]

## IV. CONCLUSION

Section 298(5) of title 14 of the Virgin Islands Code violates the Equal Protection Clause of the Fourteenth Amendment by making all assaults committed by a male against a female aggravated assault. Consequently, the Superior Court committed plain error in convicting Webster under this statute. However, the evidence was sufficient to support his convictions for disturbing the peace and unauthorized use of a vehicle. Therefore, we reverse Webster's conviction for aggravated assault, but affirm his convictions for disturbing the peace and unauthorized use of a vehicle.

---

[7] Webster contends that his sentence violates 14 V.I.C. § 104. Under section 104, "despite the fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately only be punished for one offense." *Williams v. People*, 56 V.I. 821, 832 (V.I. 2011). Because we reverse his assault conviction on other grounds, the only sentences that could implicate section 104 are the concurrent sentences imposed for disturbing the peace and unauthorized use of a vehicle. But like so many of his arguments, Webster entirely fails to clarify why he believes these sentences violate section 104. Regardless, the Superior Court's imposition of concurrent sentences for disturbing the peace and unauthorized use of a vehicle does not violate section 104 here because Webster's actions in waking his mother to demand the keys and later taking the vehicle without her consent do not constitute "a single act or omission" for the purposes of 14 V.I.C. § 104. *Cf. Galloway v. People*, 57 V.I. 693, 712 (V.I. 2012) (holding that 14 V.I.C. § 104 was not implicated where defendant's "decision to drive his vehicle while under the influence occurred at an earlier time and place than his subsequent failure to stop at the red light").